|59  19|<br>|149  379|

## Bowman *versus* Coffroth.　　　Berkey *versus* Coffroth.

1. Coffroth, a lawyer, was a candidate for Congress at the election in 1864: neither he nor his competitor received a certificate of election. On the 20th of April 1865, he procured from the war department the discharge of a drafted man, under a contract previously made. On the 19th of February 1866, he obtained his seat on his primâ facie case and was ousted July 16. *Held*, that the contract was not in violation of the Act of Congress of June 11th 1864, prohibiting members of Congress, &c., from receiving compensation for services before a department, &c.

2. Coffroth was not a member of Congress within the meaning of the act.

3. The contract was against public policy and void, whether the compensation for the services was fixed or contingent.

May 13th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Writs of error to the Court of Common Pleas of *Somerset county*: To May Term 1868, Nos. 70 and 71.

Two suits were commenced on the 19th of March 1867, by A. H. Coffroth, for the same cause of action, viz.: for his services in procuring the discharge of Daniel Berkey, who had been mustered into the service of the United States as a drafted man in March 1865.

One suit was against John Bowman, and was founded on the following paper, which was given in evidence by the plaintiff.

" Somerset Co., Pa., April 10th 1865.

" A. H. Coffroth.—Dear sir—According to promise, I will drop a few lines to you to let you know on what we have agreed

on the 9th of April about Daniel Berkey to get him out of service.

"You shall have $500 to have him discharged; if not discharged, you shall have $100 to get a way for him to put in a substitute.

"Attest,                                CATHARINE BERKEY,
"J. J. BOWMAN.                          JOHN BOWMAN.'

Catharine Berkey was the wife of Daniel Berkey.

He gave in evidence further that by means of his services Berkey was discharged on the 20th of April 1865, and that the services were rendered on the strength of the above agreement.

The plaintiff was a lawyer.

It was admitted that "Mr. Coffroth was a candidate for Congress at the general election of 1864. That there was a dispute about who was elected, and that the governor declined to declare in his proclamation that any person was duly returned as having been elected. That Mr. Coffroth appeared at Washington and claimed his seat, and on the 19th of February 1866, on the primâ facie case, was admitted, took his seat, and was duly qualified. That his seat was contested, and he was afterwards, on the 16th of July, ousted from his seat, when his competitor was admitted." The plaintiff had received $100 on account.

The defendant asked the court to instruct the jury:

1. That the plaintiff, having been a member of Congress elect at the time of the alleged services rendered the defendant, cannot recover in this action, inasmuch as it is in violation of the Act of Congress of the 11th June 1864.

2. That the contract upon which plaintiff seeks to recover in this case, being for a contingent fee for services rendered before one of the departments of the government of the United States, to procure the discharge of a soldier from the service, is against public policy, and therefore the plaintiff cannot recover.

The court (King, P. J.), in answer to the points, charged:—

"The services performed by the plaintiff, and for which he demanded remuneration in this action, were not rendered whilst he was a member of Congress *de facto*, and we therefore hold that he is not within the provisions of the Act of 1864. This is a highly penal statute, and must receive a strict construction, and it interposes no bar to the plaintiff's right to be compensated for the services he rendered.

"The second defence, namely, that the contract in this case being for a contingent fee, is against public policy, is not without difficulty, but we are not prepared to say that it is available. A very few persons understand the management of business before the departments at Washington, and it is a very common thing to employ attorneys to conduct such business, and unless they could receive compensation for their services, very few would be

[Bowman v. Coffroth.]

found willing to bestow them. But it is said the plaintiff ought not to recover because the sum to be paid was contingent on his being able to procure the discharge. We will not decide against what appears to be an almost universal practice, but will leave it to the court of the last resort to settle this question, if it has not already done so. The defendant agreed to pay the amount demanded, and we see no impropriety in holding him to his contract."

The law of Congress referred to in the 1st point is the 1st section of Act of June 11th 1864, 13 Statutes at Large 123, 2 Bright. U. S. Dig. 105, pl. 24, and is as follows:—

"No member of the Senate or House of Representatives shall after his election, and during his continuance in office, nor shall any head of a department, head of a bureau, clerk, or any other officer of the government, receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered, after the passage of this act, to any person either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest or other matter or thing in which the United States is a party, or directly or indirectly interested, before any department, court martial, bureau, office, or any civil, military or naval commission whatever, &c."

The verdict was for the plaintiff for $468.66.

The second suit was against Daniel Berkey.

On the trial the court rejected the agreement given in evidence in the first case, because there was no evidence that Mrs. Berkey made it under authority from her husband. The plaintiff then gave evidence of services rendered by him in obtaining the defendant's discharge; of the defendant's recognition of liability and of the value of the services.

The defendant submitted two points. The 1st was the same as the 1st point in the former case. The 2d was:

"That it is against public policy to permit an action to be maintained for the recovery of compensation for such services."

The court (King, P. J.) refused to affirm either point.

There was a verdict for the plaintiff for $400.

In each case the defendant took a writ of error, and assigned for error the answers of the court to the points.

*W. H. Koontz* (with whom was *C. Meyers*), for plaintiffs in error.—The contract was in violation of the Act of Congress, *supra,* and therefore void: 1 Parsons on Contracts 381 (456); 2 Kent's Com. 588 (635); 1 Story on Contracts 613, 614. The contract is against public policy: 1 Story on Contracts 545, 546; 2 Kent's Com. 588, 589; Hatzfield *v.* Gulden, 7 Watts 152; Clippinger *v.* Hepbaugh, 5 W. & S. 315; Filson *v.* Harris, 5 Barr 453; Smith *v.* Whildin, 10 Id. 39; Bowers *v.* Bowers, 2 Cas. 74.

*A. J. Colborn,* for defendant in error, referred to Hugus *v.* Robinson, 12 Harris 9; Painter *v.* Drum, 4 Wright 467; Strohecker *v.* Hoffman, 7 Harris 223; Act of Congress, *supra.*

The opinion of the court was delivered, May 20th 1868, by

READ, J.—The Act of the 11th of June 1864, relating to members of Congress, heads of departments and other officers of the government, enacts "That no member of the Senate or House of Representatives shall, *after his election,* and during his continuance in office," "receive or agree to receive any compensation whatsoever directly or indirectly, for any services rendered or to be rendered after the passage of this act, to any person by himself or another in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter, or thing, in which the United States is a party or directly or indirectly interested, before any department, court martial, bureau, officer or any civil, military or naval commission whatever."

It is declared a misdemeanor, punishable by fine not exceeding $10,000, and by imprisonment not exceeding two years, and that the convict shall be for ever thereafter incapable of holding any office of honor, trust or profit under the government of the United States.

This is a highly penal statute, and the question is whether the plaintiff was a member of Congress within the meaning of its provisions.

The congressional election took place on the second Tuesday of October 1864 in this state, and the governor did not by his proclamation declare the name of the plaintiff as elected in the Sixteenth District. The plaintiff claimed the seat, the primâ facie right to it was decided in his favor, and he was admitted on the 19th February 1866, but was ousted on the 16th of July 1866, and the seat awarded to his competitor, Mr. Koontz, who was of course the only one elected in October 1864. The transaction which is the subject of the present controversy occurred in April 1865, and the question is, Was he then a member of the House of Representatives? The first requisition is that he should be elected, for the words are after his election. Now his name was never proclaimed by the governor according to the Act of Assembly, nor was he admitted until February 1866, and on July 1866 he was ousted, and it being proved that his competitor, Mr. Koontz, was elected a member of the House in October 1864, it seems clear that in April 1865 the plaintiff was not a member within the meaning or words of the Act of Congress.

We are therefore of opinion that the contract was not forbidden by the act, the plaintiff acting simply as a practising member of the Somerset bar, and not in the capacity of a member of the House of Representatives.

[Bowman v. Coffroth.]

But it is alleged that it is against public policy to permit an action to be maintained for the recovery of compensation for such services. The compensation was partly certain and partly contingent, dependent upon success. If the principle applies, it seems immaterial whether the compensation be fixed or contingent, though Judge Rogers, in Clippinger v. Hepbaugh, 5 W. & S. 315, seems to think diffcrently, " and any argument," says the learned judge, " for a contingent fee to be paid on the passage of a legislative act would be illegal and void because it would be a strong incentive to the exercise of personal and sinister influences to effect the object."

The cases cited by the defendant in his paper-book, to which may be added Marshall v. Ohio Railroad Company, 16 Howard 314, establish that a contract to procure a pardon from the governor of a convict would now be held illegal whether improper means were used or not; so to procure the passage of a private statute, or to procure an appointment to office by private influence, or to purchase the right of administration, are all held to be illegal and void.

In principle it is difficult to perceive any material distinction between these cases and the one before us, which is an application in person to the war department for the discharge of a drafted man, and for which if successful a contingent compensation is to be paid. It is more consistent with morality and sound policy to consider it covered by the rule established in similar cases, and we therefore hold it illegal and void.        Judgment reversed.

Berkey v. Coffroth.   The same entry is made for the same reasons in this case.

Judgment reversed.