## Goodyear v. Brown, Appellant.

[Marked to be reported.]

*Public officers—Illegal acts—Public policy.*                        •

Dealings between a public officer in his official capacity and himself as a
private citizen, of such a nature as to bring him in collision with other citi-
zens equally interested with himself in the integrity and impartiality of the
officer, are against public policy.

Public policy means the public good.   Anything that tends clearly to in-

jure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights whether of personal liberty or of private property which any citizen ought to feel, is against public policy. Per MR. JUSTICE WILLIAMS.

*Land office—Secretary of internal affairs—Warrants—Surveys.*

Public policy forbids that the secretary of internal affairs should receive his own individual application for a land warrant, grant it, cause a survey to be made and returned upon it, accept the return of survey, pass upon the validity of the survey as a member of the board of property, and finally cause a patent to be issued to himself, the individual, for the land included in the survey. The same rule applies to the deputy secretary.

Argued May 3, 1893. Appeal, No. 323, Jan. T., 1893, by defendant, Isaac B. Brown, from judgment of C. P. Potter Co., June T., 1891, No. 20, on verdict for plaintiff, F. H. Goodyear. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Ejectment.

At the trial, before OLMSTED, P. J., defendant offered in evidence warrant dated Jan. 29, 1891, to Isaac B. Brown for nine hundred acres of unimproved land, and in connection therewith survey made in pursuance of the foregoing warrant, dated May 7, 1891, for nine hundred acres of land, duly returned and patented to Isaac B. Brown, and including the land in dispute.

Plaintiff's counsel objected on the ground that it is against public policy for the deputy secretary of internal affairs to have a warrant from the commonwealth granted to him, as he, in the absence of the secretary, is the custodian of the records, has charge of the books, has charge of the acceptance of surveys, and in fact represents the commonwealth with whom he deals, and thereby representing, in the absence of his principal, the grantor and grantee ; that his trusteeship as such deputy officer is such that it is against public policy to allow him to take a warrant. Also gave as a reason for the objection on the ground of public policy that the defendant in this case, Isaac B. Brown, is the trustee, not only of the commonwealth, but of all persons who own lands under the commonwealth, by his being custodian of the records. Objection sustained and exception. [1]

The court charged in part as follows :

" [In the view we take of the law in the case (and in this we

may be mistaken) we think the defendant stood in such a rela-
tion to the case as it was illegal for him to become a purchaser
of the commonwealth, he being the deputy secretary of inter-
nal affairs at the time of his purchase, and for that reason we
have excluded the evidence which the defendant has offered
here of his purchase from the commonwealth.] " [2]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (1) ruling on evidence, and (2) instruc-
tions ; quoting instructions and bill of exception.

*C. L. Peck* and *S. R. Peale, Benson & Seibert* with them, for
appellant.—If land be vacant, why may not any citizen buy it ?
If land belonging to the state has not been sold or appropriated,
why may not the state sell it to whomsoever may first apply ?
Whom can it harm?    What vested right does it invade?    What
public policy does it antagonize ?    The mode of sale and
purchase of location and conveyance of title from grantor to
grantee is prescribed by law; the price per acre is fixed by law.
What room is there for fraud ?    If the land is not vacant, the
purchaser takes no title.    If it is vacant, who may complain, if
the commonwealth is content?

Why may not the deputy secretary of internal affairs make
such a purchase ?    It is argued that he stands in the relation
of a trustee, and therefore may not buy.    A purchase by him
from the commonwealth is likened to a purchase by an admin-
istrator at his own sale.    We reply that the law does not allow
an administrator to buy the effects of the intestate, because,
having control of the price, he might be tempted to depress the
value for his own advantage, or otherwise impair the rights of
his cestuis que trust.    But in the case at bar, if we were to
concede trusteeship for the sake of the argument, the supposed
analogy must fail, because the price is fixed by law, and by no
possibility can the owner be wronged.

In Quin v. Brady, 8 W. & S. 141, Mr. Justice HUSTON
(the most eminent authority on land law in Pennsylvania) re-
marks : " If land was clear of other claims, there never was any
law or regulation of the land office forbidding a deputy surveyor
to take it."

In Strimpfler v. Roberts, 18 Pa. 288, a case " twice argued

with great ability," it was conceded that a clerk in the land office could take title to lands from the commonwealth, the question being simply whether he had paid the purchase money in his own right or as an agent for the warrantee.

*Henry C. McCormick* and *H. C. Dornan*, of *Dornan & Peck*, *Larrabee, Lewis & Leonard* and *Mann & Ormerod* with them, for appellee. — Any transaction or contract which is calculated to induce a dereliction or laxity in the performance of a public duty is void: Greenhood on Public Policy, 306; Clippinger v. Hopbaugh, 5 W. & S. 315; Myers v. Hodges, 2 Watts, 381; 2 Pomeroy's Equity Jurisp., 2d ed., § 935; People v. Township, 11 Mich. 222; Lucas v. Allen, 80 Ky. 681; Webb v. Dietrick, 7 W. & S. 401; Chronister v. Bushey, 7 W. & S. 152; Dillon, Mun. Corp., 4th ed. § 434; DeLeon v. White, 9 Texas, 598; Flanikin v. Fokes, 15 Texas, 180.

Under the law, the secretary of internal affairs and his deputy are the custodians of the original title papers of both plaintiff and defendant. Isaac B. Brown, by virtue of his office as deputy secretary of internal affairs, is not only the custodian of the evidence of his own title, but also of that of his adversary.

This transaction offends the sense of propriety of every citizen, and this is in itself evidence that the act is contra bonos mores, and therefore contrary to law. The officer is a trusted and paid servant of the public and the agent of the commonwealth. If this officer may lawfully do what is complained of, in the case at bar it diminishes if not destroys that respect for public officers and their official acts, absolutely necessary to be maintained, if the government itself is to continue: 2 Pomeroy, Equity Jurisp. § 935.

It also seems that the same legal principle is applicable in this transaction, which governs in the relation of principal and agent, trustee and cestui que trust and attorney and client, and all other relations where persons are intrusted with or employed in the affairs of others: Sugden on Vendors, 82; Michoud v. Girod, 4 How. 503; Blennerhassett v. Day, 2 B. & Be. 116; Ringo v. Binns, 10 Peters, 269; Davoue v. Fanning, 2 Johns. Ch. 252; Galbraith v. Elder, 8 Watts, 81; Dillon, Mun. Corp. § 444; People v. Overyssel Township, 11 Mich. 222; Edwards v. Estell, 48 Cal. 194.

The courts upon questions of public policy do not give relief for the sake of the parties who complain but for the sake of the public, and to avoid public injury : R. R. v. R. R., 4 De G. M. & G. 115; Wight v. Rindskopf, 43 Wis. 344; Hamilton v. Wall 2 Ired. Eq. 191; Greenhood, Public Policy, rule 141, p. 124 ; Oscanyan v. Arms, 103 U. S. 261.

The case of Quin v. Brady, 8 W. & S. 141, cited by appellant, is not only not an authority in favor of the position taken by the learned counsel, but, if it has any bearing whatever upon the case, is the other way.

Opinion by Mr. Justice Williams, May 22, 1893 :

It is true, as the appellants contend, that there is no enactment to be found in the statute book of this state which in words forbids the secretary of internal affairs to receive his own individual application for a land warrant, grant it, cause a survey to be made and returned upon it, accept the return of survey, pass upon the validity of the survey, as a member of the board of property, and finally cause a patent to issue to himself, the individual, for the land included within it. But it does not follow that everything may be done by a public officer that is not forbidden in advance by some act of assembly. Remedies are provided for evils when they are discovered, and rules of law are applied when a necessity arises for their application.

What is alleged in this case, and was held by the learned judge of the court below, is that dealings between a public officer and himself as a private citizen that bring him in collision with other citizens, equally interested with himself in the integrity and impartiality of the officer, are against public policy. In a general way it may be said that public policy means the public good. Anything that tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy. Thus, contracts in restraint of trade or marriage, gambling contracts, usurious contracts, contracts to do immoral acts or to procure them to be done by others, are against public policy. The courts will not enforce notes given on Sunday or for an illegal consideration, because public policy forbids it.

They will not enforce any form of contract which binds the maker to do an act that is contrary to law, or that is hurtful to the public, the state, or the nation, because such contract is against the public good and therefore against public policy. But public policy forbids many things that do not rest on contract. All the statutes and decisions relating to the exercise of the police power; to the incompatibility of certain offices; to the power of municipal authorities to enforce quarantine regulations; and many similar subjects, rest on public policy. It would require no statute to justify a court in holding that a city or county treasurer could not be at the same time the auditor to settle and adjust his own accounts. The temptation it would afford is too great to make it good policy to subject the officer to it, or the public to its possible consequences. Our constitution makes a member of the legislature ineligible to an office that was created by the body of which he was a member. The reason is that if he was eligible he might be affected by the temptation to make a place for himself. Examples of the practical application of the rule, that what is against the public good is against public policy, might be multiplied largely, without rendering the reason of the rule any more apparent than it must be from those already referred to. We proceed therefore to inquire whether the defendant's title is affected by public policy. The office of secretary of internal affairs is a comparatively new one, having been created by the present constitution of the state. Its powers and duties are defined by the act of May 11, 1874. The officer is the elective and responsible head of an independent department of the state government. He is elected by the people of the state, for a term fixed by law. He reports the working of his department directly to the legislature; and within the range of the duties imposed upon him represents the whole people, as truly as the governor does in the performance of his duties as the executive head of the state. Among other duties and responsibilities committed to the secretary of internal affairs are all those formerly resting on the surveyor general. He has the survey and sale of the public lands, and, in connection therewith and as incidental thereto, he has the exclusive custody of all books, documents, maps and returns of survey relating to them, to state and county lines, to state and turnpike roads, and to rail-

roads, canals and other public improvements. Applications for the survey of any part of the public lands must be made to him. If granted he issues the warrant to the proper deputy surveyor to make the survey. When the survey is made it must be returned to him for acceptance. The patent or deed of the state issues only on his certificate or direction. Every step in the patentee's title, every particle of evidence relating to each step, down to the delivery of the patent, is to be found in his office, if it is to be found at all; and can only be seen under his direction. All copies for use in the courts must be made and certified by him. In fact he is the custodian of all the public records relating to all the lands in the state; and upon his fidelity titles of vast importance and value depend. It will not be contended that these invaluable public records are placed in his care for his private profit. His fellow citizens did not elect him to the head of this department of government to enable him to prey upon their titles, or speculate on the age of their surveys, or the want of form in the work of clerks or surveyors through whose hands their applications have passed. On the contrary his office is a public trust. He holds the books, documents, maps and surveys in his office for the protection of the titles granted under or evidenced by them, and he is bound to absolute integrity and impartiality towards every person interested in them. But he is more than a custodian of these evidences of title. He is, by virtue of his office, a member of the board of property, and sits therein as a judge to hear and determine all questions raised by caveat or petition affecting returns of survey, the location of warrants and warrant lines, the rights of settlers and the titles of patentees. The nature of his duties disqualifies such an officer from dealing with his own department, or sitting in judgment on his own or his adversary's title of the public lands, as clearly as does the office of president judge of the court of common pleas disqualify the individual who holds the office from personally conducting his own litigation, in his own court, before himself. If a judge has the misfortune to be interested in a cause in his own court, the law provides that an impartial judge shall be called in from an adjoining district to try the cause; but the state can have but one secretary of internal affairs. No provision has been made for the settlement of controversies over

titles to the public lands between him and private citizens, the records of whose titles were in his possession and under his control. It seems never to have occurred to our constitution makers or law makers that one holding this important office would voluntarily place himself in a position to render a provision of that sort necessary. It is for this reason that no statute can be found that expressly forbids him to traffic with himself in the public lands. His deputy is his executive hand, and is disqualified by the same considerations that affect the secretary himself. Neither of them has any right to acquire, while occupying the office, an interest in the lands under the care of the department, that shall make the suppression, the destruction, or the mutilation, of a map, a paper, or a word or letter of any document or record in his exclusive custody, a matter of advantage or profit to himself.

We have in the case now under consideration a striking and startling illustration of the practical operation of the doctrine contended for by the appellant. The plaintiff is an extensive manufacturer of sawed lumber in the county of Potter. Among the lands purchased by him for the supply of his mills with timber is a large tract known as warrant No. 4714 in the warrantee names of Isaac Wharton et al. This tract purports to be one of a block of surveys made at the same time, of which No. 4724 is a member and is called for as an adjoinder of 4714. The plaintiff and those through whom he derives his title have paid taxes on this tract for nearly a century, and have understood and claimed that it was located adjoining No. 4724, as the calls would indicate. In 1891 the deputy secretary of internal affairs procured a warrant to be issued to himself for nine hundred acres of land alleged to be vacant, situated in the county of Potter and adjoining No. 4724. It was promptly returned by the deputy surveyor for Potter county with a survey covering most if not all of the land claimed by plaintiff under No. 4714. The plaintiff becoming aware of the survey so made appeared before the board of property to protest against the attempt to appropriate his land. This tribunal promptly decided against him, and a patent was as promptly issued to the deputy secretary of internal affairs, with the fullest knowledge on the part of both the secretary and his deputy that the land was claimed under an older warrant. There was nothing left for the plain-

tiff but an appeal to the courts. This he had to make with the knowledge that every paper, and every scrap of evidence relating to the issuing, location and return of his warrant, was in the possession and under the control of his adversary. He could have an inspection of these papers and documents only by permission of the officer who, as an individual, was interested in defeating his title. He must apply to the same officer for the copies needed for the trial of his cause. The antagonism between the duties of the officer and the pecuniary profit of the man who held the office is plain and direct. It was brought about by the voluntary act of the officer having at the time the fullest knowledge of the situation, and of the necessary consequences of his conduct. In such a contest the officer has an advantage never contemplated or provided for by the law makers. He is exposed to a temptation from which he should have fled. The department under his practical control is subjected to criticism and suspicions that have a tendency to create public distrust of the integrity of its administration, and of the security of titles depending on the records under its care. But the contagion of the example set by the deputy secretary is noticeable. When the trial was reached in the court below, it turned out that the deputy surveyor who located the warrant of 1891, and who had the rightful custody of the records of that office, was put in an unfortunate position for his disinterestedness as a witness by the fact that his wife had become a part owner of the land under a grant from the deputy secretary. An experienced surveyor from an adjoining county, whose familiarity with the original lines in that region made his testimony of great importance in reaching a conclusion as to the proper location of 4714, had been placed in the same predicament, by the same expedient. His wife was also a part owner, deriving her title from the deputy secretary. Surely the owner of No. 4714 was in gremio legis. This remarkable combination may have been accidental. We presume it was innocent. Nevertheless to litigants whose property is at stake, and to spectators, measuring the acts of men by the common business standards, it suggests possible dangers and temptations on which we will not enlarge. Such dealings by an officer are to be regretted because of their necessary consequences; and a proper consideration for the public security, and for the confidence of citizens

in the officers of the state, forbid them.   Whether we consider the interests of the citizens for whose security and protection the state exists, or the preservation of public confidence in the purity of the administration of public affairs, or the honor and character of the officer as a public servant, the conclusion reached is the same.   Public policy cannot tolerate such dealings by an officer with his own department or office.   It will not uphold them.

It follows that the warrant issued to the deputy secretary of internal affairs confers no title, as against a claimant under an older survey, to the land in controversy.   The warrant was issued contrary to public policy.   The board of property should have refused to accept the return of survey under it and to permit a patent to issue for it.   The learned judge of the court below rightly rejected it when offered on the trial, for the purpose of showing title in the appellants, and the judgment is now affirmed.