## McCabe *v.* Sacchetti, Appellant.

*National banks—Directors—Compensation for negotiating loans —Act of Congress, December 23, 1913, chapter 6, section 22.*

Under the Act of Congress of December 23, 1913, chapter 6, section 22, which declares that "no officer, director, etc.,......of a member bank shall be a beneficiary of or receive directly or indirectly any fee, commission, gift or other consideration for or in connection with any transaction or business of the bank,....:..any person violating any provision of this section shall be punished by a fine or by imprisonment or both," a director of a national bank cannot accept money for procuring a loan in the bank of which he is a director, and a note given on account of such service is without valid consideration.

Where, in an action on a promissory note the defense was that it was given to a director of a national bank in consideration of his services in securing a loan from his bank, the defendant is entitled to have the evidence submitted to the jury, relative to such

negotiations, with the instruction that, if believed, the consideration of the note was against public policy and the contract void.

Argued December 2, 1919. Appeal, No. 180, Oct. T., 1919, by defendant, from judgment of C. P. Northampton County, July T., 1917, No. 105, on verdict for plaintiff in the case of Michael McCabe v. Onofrio Sacchetti. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit on promissory note. Before STEWART, P. J. '

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $606.66 and judgment thereon. Defendant appealed.

At the trial the defendant submitted the following points:

1. It is not lawful for a director of a national bank to demand or receive payment for negotiating loans from the bank in which he is a director.

2. It is against the policy of the law for a director of a national bank to demand or receive payment for recommending the discounting of notes for customers or borrowers by the bank in which he is a director.

3. If the jury shall find from all the evidence in this case that the note in suit was given by the defendant to the plaintiff for bringing about the discounting and renewing of a certain promissory note drawn by the defendant and endorsed by the plaintiff then the plaintiff is not entitled to recover, and the verdict must be for the defendant.

4. To entitle the plaintiff to a verdict he must prove by the weight of the evidence that the note in suit was given to him for a valid consideration.

5. If the jury shall find that the consideration for the note in suit was the endorsement of defendant's note and all renewals thereof until such time as the defendant

could, at his convenience, pay the same, and that the plaintiff refused to endorse any such renewal, and suffered the same to be protested, and if the court shall hold that to have been a valid consideration then the plaintiff is not entitled to recover, and the verdict must be for the defendant.

6. Under the law and the evidence the verdict must be for the defendant.

*Errors assigned* were the answers to points submitted by the defendant and refusal to reopen the case to permit further cross-examination of the plaintiff.

*George W. Geiser,* for appellant.—It was not lawful for the plaintiff to accept money for procuring a loan at his own bank and the contract was void and against public policy: Magee on Banks and Banking, 105, section 96; Wickersham v. Crittenden, 93 Cal. 17; Oakland Bank v. Wilcox, 60 Cal. 126; 19 Am. and Eng. Encyc. of Law, 565; 2 Am. and Eng. Encyc. of Law, 365; Baker v. Collins, 9 Allen 253; Webster v. Sanborn, 47 Me. 471.

The court below erred in not reopening the case on motion of the defendant: McCoy v. Niblick, 221 Pa. 123; Hastings v. Thompson, 47 Pa. Superior Ct. 424.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellee.

Opinion by Head, J., February 28, 1920:

The plaintiff sues to recover a sum alleged to be due on a promissory note. In his statement of claim he contents himself with the simple averment of its execution by the defendant and delivery to him for value before maturity, with the further declaration that no part of the same had been paid. By way of defense, the defendant sets up a state of facts tending to prove that plaintiff was a director in a national bank, that defendant desired to borrow a sum of money larger than he would

be able to secure on his own credit from the bank, that he agreed with the plaintiff to pay him the sum of five hundred dollars if he, the plaintiff, would endorse the note of the defendant, procure its discount at the bank, and renew the same from time to time until it was paid. It was, as he alleges, in pursuance of this contract that he signed and delivered to the plaintiff the note in suit. His evidence would support a finding that plaintiff did endorse the defendant's note for thirty-four hundred dollars, that he did interview his fellow directors on the subject, and procured their assent to the discount of the note, that the note was renewed from time to time and carried along until it had been reduced to the sum of twenty-five hundred dollars. Thereafter the plaintiff refused to further endorse the note and brought this action on the obligation given to him by the defendant. The bank of which the plaintiff was a director was a national bank and as such was affected by the provisions of the Act of Congress of December 23, 1913, chapter 6, section 22, which declares that "no officer, director, etc.,......of a member bank shall be a beneficiary of or receive directly or indirectly any fee, commission, gift or other consideration for or in connection with any transaction or business of the bank ......any person violating any provision of this section shall be punished by a fine or by imprisonment or both."

It ought not to be necessary to more than state that reasons of the highest public policy demand the careful enforcement of such a statute. The confidence which the public should feel in the integrity and soundness of these financial institutions is an asset of the greatest value to the banks themselves and greatly promotes the feeling of quiet security without which the transactions of the business world cannot be successfully carried on. That confidence lives and flourishes only in the rarefied atmosphere created by such conduct of its financial affairs by its officials as to keep them above suspicion. It is true, it is not an illegal act for one person who is a di-

rector in a bank merely to lend the credit of his name to another, and demand and receive some compensation therefor. Had the plaintiff simply endorsed, as an accommodation endorser, the paper of the defendant and then permitted the latter to use it for its value in such way as he deemed best, the prudence of the act might be questioned, but its legality could not be denied. The plaintiff himself thus testified in part: "Q. What was your arrangement? What was your contract? A. I was to endorse for him. Q. And use your influence to procure the discounting of the note. A. Yes, I would have to see the Board of Directors first whether they would give this loan."......"So I brought the matter up before the Board of Directors." If the jury were to take him at his word on that piece of testimony alone, it would be difficult to see why such a transaction would not be within the prohibition of the statute. Hence, there was evidence which, if believed, by the jury, made relevant proper instructions by the court on the legal principle set forth in the first three points presented by the defendant. They were all refused and not read. It will be sufficient to quote the first of them: "It is not lawful for a director of a national bank to demand or receive payment for negotiating loans from the bank in which he was a director. A. Refused and not read." In answering these points, we are constrained to conclude the learned trial judge fell into error. The evidence on the subject is scant, it is true, but it was not withdrawn from the jury and perhaps could not have been merely because it was meager in quantity. Therefore, the defendant was entitled to have proper instruction from the court on the legal principle that would arise in case they found the facts to be as contended for by the defendant. The first three assignments are sustained. The fourth specification is overruled, without further comment than to say, it seems plain to us there was no case for a binding direction in favor of the defendant.

The fifth assignment complains of the refusal of the learned trial judge to reopen the case after the testimony had closed, to permit the defendant to offer in evidence the plaintiff's replication. In that replication the plaintiff had sworn that the consideration of the note in suit was a loan of $500 and not compensation for the use of his personal credit as an endorser. That position appears to have been abandoned by him at the trial, as we find no attempt to support it in the evidence. Nevertheless, the replication he had sworn to, if offered in evidence at the proper time, would have been certainly admissible to affect the credit of the plaintiff as a witness. As the case must go back for a retrial, it would be now a purely academic question to determine whether or not there was any abuse of the wide discretion residing in the trial judge in refusing a motion to reopen the case. The question is not likely to recur in that form upon the next trial. For the reasons assigned.

The judgment is reversed and a venire facias de novo awarded.