## Crooks's Estate.

Argued October 1, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph H. Reich,* with him *Adolph L. Zeman,* for ap
pellant.

*John C. Judson,* for appellee.

OPINION BY MR. JUSTICE LINN, November 26, 1934:

At the audit of the administrator's account, Cooley,
the appellant, presented a claim on a contract made with
decedent. It was rejected on the ground that the con-
tract was against public policy.

Crooks, decedent, and Cooley were architects. Crooks
desired professional employment on extensive improve-
ments proposed to be made to the Western State Insane
Asylum. To meet possible objections arising from lack
of experience, or other disqualification on the part of
Crooks, a contract that Cooley should endeavor to secure

the contract for Crooks resulted. It was finally stated in the following letter:

"Confirming our verbal arrangement the writer agrees to pay you a sum equal to one and one-half percent of the cost of any improvements to the Western State Insane Asylum at Blairsville, Pa. which the Commissioners of the said Institution may engage me to make at any time in the future.

"This payment to you is for valuable assistance rendered me in my efforts to secure contract for above work. Payments to be made you in same proportion as money is received by me."

Cooley testified that, on behalf of and for the purpose of obtaining the appointment of Crooks, he, considered the matter with the head of the asylum board, with the governor of the State, and with others supposed to have influence in the selection. It does not appear that he informed these persons that he had a large contingent interest in the compensation which would be payable to Crooks, if appointed. His recommendation was not, as it appeared to be, disinterested. His services, in the opinion of the learned auditing judge, were effectual in obtaining the appointment of Crooks.

For a promised division of the emoluments to be received by Crooks, Cooley persuaded the public authorities to award the contract to one who would otherwise not have been chosen. Such a contract is plainly against public policy because of its corrupt tendency: it tends to a sale of personal influence in circumstances in which it is the duty of public officers to make the best possible appointment without regard to private interests, and in which that duty cannot properly be performed in ignorance of the contingent interests of the interceding party. Such agreements are uniformly declared invalid, not because in particular cases improper influences were contemplated or used, but because of the general tendency to overreach the public. See Kuhn v. Buhl, 251 Pa. 348, 96

A. 977, and cases referred to on page 370 et seq.; 3 Williston on Contracts, section 1726 et seq.

In Weil v. Neary, 278 U. S. 160, in dealing with the suggestion that the illegal contract of the lawyers had in fact been beneficial, the court said (at pages 173-4) : "But this is not a sufficient answer to the charge of illegality. The contract is contrary to public policy—plainly so. What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases. ...... Enforcement of such contracts when actual evil does not follow would destroy the safeguards of the law and lessen the prevention of abuses: Tool Co. v. Norris, 2 Wall. 45; Woodstock Iron Co. v. Richmond Extension Co., 129 U. S. 643; Oscanyan v. Arms Co., 103 U. S. 261; Meguire v. Corwine, 101 U. S. 108; Connors v. Connolly, 86 Conn. 641; Richardson v. Crandall, 48 N. Y. 348; Palmbaum v. Magulsky, 217 Mass. 306, 308."

Decree affirmed at appellant's costs.