## Bruno v. Cara, Appellant.

Argued December 13, 1934.

Before Trexler, P. J.; Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Ralph M. Bashore,* for appellant.

*J. F. Mahoney,* and with him *Frank A. Bruno,* for appellee.

Opinion by Keller, J., February 1, 1935:

Defendant has appealed from a judgment against him for want of a sufficient affidavit of defense, in an action of assumpsit. The judgment must be reversed.

The plaintiff brought suit on the following written instrument under seal:

"Kelayres, Pa., October 12, 1931.

I, Pasquale Cara, of the Township of Kline, County of Schuylkill and State of Pennsylvania, do hereby

promise to pay to Joseph J. Bruno, of Kelayres, Pa., $200 on each $1,000 of insurance money which I may recover, either by amicable action or by a favorable verdict of the jury in the case now pending in the Court of Common Pleas of Schuylkill County, in which I sued the fire insurance companies for $5,000 loss sustained by the destruction of the Beaver Brook Breaker.

Pasquale Cara (Seal)"

He averred in his statement of claim that two cases were brought by defendant in the Court of Common Pleas of Schuylkill County to recover the loss sustained by him by the destruction by fire of the Beaver Brook Breaker, to wit, against Newark Fire Insurance Co. to No. 81 July Term, 1930, and Merchants Fire Insurance Co. to No. 82 July Term, 1930, and that said cases were amicably adjusted by the insurance companies by the payment to this defendant of $4200 on or about October 3, 1933 and that, by virtue of the said instrument in writing above, the defendant thereupon became liable to pay to the plaintiff the sum of $840, with interest from October 3, 1933, "in accordance with the terms of said written instrument."

The affidavit of defense filed by the defendant lacked definiteness and particularity in some of its averments, but contained one clause which, in our opinion, was sufficient to prevent a summary judgment in plaintiff's favor, to wit:

"11. The defendant further avers......that the agreement was procured by fraud and undue influence; and that the agreement is illegal and contrary to public policy in that the plaintiff induced the defendant to execute the said agreement upon the promise that he, the plaintiff, would fix the judges and the jury in these cases."

This is a definite allegation that the inducing cause for the signing by the defendant of this rather unusual

obligation was the promise by the plaintiff that he would 'fix the judges and the jury' in the insurance cases to which it relates. If this is true, and for the purposes of this case we must assume that it is true, the agreement is wholly null and void and incapable of enforcement, as opposed to public policy. As the consideration is indivisible, the whole falls. It is not void merely as respects payment for a judgment obtained in said suits by 'fixing the judges or the jury.' It is wholly and totally void, and the fact that it is under seal will not save it. A scroll will not cleanse it of illegality.

It should not be necessary to cite authorities for so manifest a proposition, but we refer to the following out of many: Waychoff v. Waychoff, 309 Pa. 300, 163 A. 670; N. Y. & Penna. Co. v. Cunard Coal Co., 286 Pa. 72, 81, 132 A. 828; Kuhn v. Buhl, 251 Pa. 348, 96 A. 977; Goodyear v. Brown, 155 Pa. 514, 26 A. 665; McCabe v. Sacchetti, 73 Pa. Superior Ct. 500; and Crook's Est., 316 Pa. 285, 175 A. 410.

"The law guards with jealousy every avenue to its courts of justice, and strikes down everything in the shape of a contract which may afford temptation to interfere with its due administration": Ormerod v. Dearman, 100 Pa. 561, 564; cited with approval in Waychoff v. Waychoff, supra, p. 306. " 'Even though a contract does not directly require any unlawful or improper act for its performance, if the tendency of the contract is to encourage or hold out a reward for a result that can be brought about only by an unlawful act, the contract is opposed to public policy': 3 Williston on Contracts 3055......It is clearly established by our authorities that, where a transaction is illegal, and this fact necessarily appears in the testimony which is produced, the courts will lend their aid to neither party, and it is not necessary that such a defense appear in the pleadings of record: Conemaugh

Brewing Co. v. Bennett, 60 Pa. Superior Ct. 543; 3 Williston on Contracts 2867": N. Y. & Penna. Co. v. Cunard Coal Co., supra, p. 81.

It is not essential that evil actually follows the enforcement of the contract. "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results, but their tendency to evil in other cases:" Weil v. Neary, 278 U. S. 160, 173, cited with approval in Crook's Est., supra.

The appellee relies on a number of decisions of the Supreme Court and of this court which, quoting Swan v. Scott, 11 S. & R. 155, 163, hold that "The test, whether a demand connected with an illegal transaction, is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If a plaintiff cannot open his case without showing that he has broken the law, a court will not assist him, whatever his claim, in justice, may be upon the defendant"; and argues that because no illegality appears on the face of the instrument sued on he may recover and the defendant may not plead nor prove its illegality. He has misconstrued that decision, and the cases which follow it. It does not hold, conversely, that if a plaintiff can *open* his case without showing that he has broken the law he can enforce his claim in a court of law, irrespective of whether it is, in fact, illegal or violative of public policy, and that the defendant cannot attack it on that ground, for immediately following the quotation above, the court went on to say: "If the illegality be *malum prohibitum* only, the plaintiff may recover, *unless it be directly on the forbidden contract; a bond, the consideration of which grows out of an illegal transaction; there, the illegal consideration is the sole basis of the bond and there can be no recovery.*" [italics supplied] It will be noted that the opinion refers to a *bond,* and a bond is a written instrument under seal,

Here, if the averment of the affidavit of defense is true, the bond sued on grows out of an illegal transaction, because the illegal consideration which led to its execution is its sole basis. In order to make out his case the plaintiff pleads and relies on this illegal bond. He requires the aid of the *illegal transaction* to establish his case. His claim is specifically based on the illegal writing and he seeks payment "in accordance with the terms of said written instrument."

The authorities cited by the plaintiff do not hold, as he contends, that if he is artful enough to draw up a contract or bond which, on its face, omits all reference to the illegal consideration which induced its execution, he can require a court of law to enforce it, notwithstanding it is violative of public policy, and that the other party cannot defend against it on the ground of its illegality. What they decide is that if the plaintiff, apart from the illegal bond or contract, has a valid and legal claim against the defendant, which can be made out without reference to the *illegal transaction,* he may enforce it in a court of law even though it may relate to the subject matter covered by the illegal contract. See cases cited in N. Y. & Penna. Co. v. Cunard Coal Co., supra, pp. 81, 82. For example, if this plaintiff, apart from this void and illegal instrument, has rendered any valid and legitimate services to this defendant at his request, in connection with the insurance cases referred to, he can, in an action brought on the implied promise of the defendant to pay for them, recover their reasonable value, for such an action would not be based on the illegal transaction. But as to an action on the written agreement, he cannot enforce it. The consideration is indivisible and if illegal in part, it falls as a whole: Kuhn v. Buhl, supra.

The plaintiff's argument is completely shattered by the language of Mr. Justice SIMPSON in Waychoff v.

Waychoff, supra, p. 304: "Where a written contract is attacked upon the ground that it is offensive to law and violative of public policy, the substance, not the form, is looked at; *the court will not confine its attention to the mere words in which it is expressed, but evidence aliunde the contract is admissible to prove the consideration.*" [italics supplied] In such case, the law leaves the parties as it finds them. It will not enforce payment in favor of an obligee, who has not been paid; it will not require an obligee who has been paid to refund the money to the obligor.

In many of the cases cited above, and others to the same effect, the instrument sued on showed no illegality on its face. For example, in Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173, the action was on a bill of exchange payable to the plaintiff and accepted by the defendant. It showed no illegality on its face, but it was held to be 'tainted by the illegality' (p. 189), and as the suit was between the original parties to the bill, no recovery could be had upon it. In McCabe v. Sacchetti, supra, the plaintiff sued on a promissory note given him by the defendant. It disclosed no illegality on its face, but we held, nevertheless, that there could be no recovery upon it, if, as the defendant alleged, it was given the plaintiff as consideration for his influence as a national bank director in procuring a bank loan for defendant. Nor did the illegality appear on the face of the land warrant in Goodyear v. Brown, supra. It does not affirmatively appear from the reports of the cases that the contracts struck down in Kuhn v. Buhl, supra, and Crook's Est., supra, revealed their illegality on their faces. Evidence aliunde the contract was received to establish their illegality or that they were violative of public policy.

Further discussion is unnecessary. The assignment of error is sustained. The judgment is reversed with a procedendo.