## Borden, Appellant, *v.* Ellis.

Argued September 26, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Samuel H. Torchia,* for appellant.

*Thomas P. Mikell,* with him *Earl G. Harrison,* for appellee.

OPINION BY ROSS, J., November 19, 1945:

This is an appeal from an order of the Court of Common Pleas No. 1 of Philadelphia County reversing an order entered by the chancellor requiring defendant to render an account, on the theory that the agreement upon which the account was based was void as against public policy.

The plaintiff is the owner of "The Observer and Sporting News", a newspaper published in Philadelphia County. The corporate defendant is "The Philadelphia

Dispatch Publishing Company", which also publishes a newspaper, "The Dispatch", in Philadelphia. The bill as to the individual defendants has been dismissed.

In June 1939 the parties to this action each attempted to secure from the Secretary of Revenue a contract for advertising escheat notices in their newspapers. Knowing that only one of their newspapers could obtain the contract, the parties agreed between themselves that one newspaper should publish the notice and after deducting certain expenses divide the net proceeds with the other. This agreement was known to the Secretary of Revenue and approved by him, and the notices were published in "The Dispatch".

In 1939 the Commonwealth paid for its advertisement in the defendant's newspaper, $2,239, and after deducting costs of publishing the advertisement amounting to $60, the remainder of $2,199 was divided between the two newspapers, $1,089.50 to each. In 1940 the Commonwealth paid $3,509, and after deducting expenses of $309, $1,600 was distributed to each party. In 1941 the Commonwealth paid $3,749 and the costs of the defendant were $338. One-half of the balance of $3,411 is the amount which the chancellor found to be the amount of the plaintiff's claim.

The court below entered a decree nisi ordering the defendant to file an account showing the net profit from said transaction and the amount due the plaintiff. Exceptions to the decree nisi having been filed by the defendants, the court en banc vacated the decree and ordered that the bill be dismissed on the ground that the contract was against public policy and therefore void, and this appeal followed.

"Whether or not a contract, the terms of which have been ascertained, is void as in contravention of public policy is a question of law to be determined by the court." *Constructors Association of Western Pennsylvania v. Seeds et al.,* 142 Pa. Superior Ct. 59, 15 A. 2d 467. A contract against public policy cannot under any

circumstances be made the basis of a cause of action. If the contract is still executory, the promisor is left undisturbed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him." *Pittsburgh v. Goshorn,* 230 Pa. 212, 227, 79 A. 505. It is not essential that evil actually follows the enforcement of the contract. What is struck at in the refusal to enforce contracts of this kind is tendency to evil in other cases. Enforcement of such contracts when actual evil does not follow would destroy the safeguards of the law and lessen the prevention of abuses. *Crooks' Estate,* 316 Pa. 285, 175 A. 410; *Bruno v. Cara,* 116 Pa. Superior Ct. 544, 548, 176 A. 863.

The record in this case shows that both parties to this action were keen and persistent competitors for this advertising contract. As a result of the agreement entered into, the competition of the plaintiff was extinguished. In *Kuhn v. Buhl,* 251 Pa. 348, 96 A. 277, the Supreme Court, speaking through Mr. Justice MOSCHZISKER, stated at page 367: "The law is established that, where any public right, franchise, contract or privilege is to be disposed of by government officials or agents, whether by a public letting or awarding upon bids, or by the exercise of official discretion without public bids (Hunter v. Nolf, 71 Pa. 282; Gulick v. Ward & Bailey, 10 N. J. (Law) 87; Boyle v. Adams, 50 Minn. 255), it is against public policy for one competing applicant, candidate or bidder to contract for the extinguishment of another's competition".

Under the facts of this case it might very well be found that the public interest was damaged as a result of the elimination of competition between the parties. The record discloses that for the years 1939 and 1940 the defendant received from the State $5,748.00, and out of that sum paid to the plaintiff the sum of $2,689.50. The defendant, therefore, for the printing of the escheat no-

tices for these years received a net total of $3,058.50. For the year 1941 the defendant received $3,749.00 from the Commonwealth and if the agreement in this case were not against public policy, it would be compelled to pay to the plaintiff $1,705.50. Therefore, it is certainly logical to assume that if the competition between the parties had continued the Commonwealth might have saved $4,395.00, or nearly 50 per cent. of the cost to it for the printing of these notices. However, it is not necessary for us to decide that the Commonwealth was damaged because where a contract belongs to a class which is against public policy it will be declared illegal, although in that particular instance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result. 15 Am. & Eng. Encyc. of Law (2d Ed.) 934, and the validity of the contract is determined by its general tendency at the time it is made, and if this is opposed to the interests of the public it will be invalid, even though the interest of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract and not its actual injury to the public in a particular instance. 9 Cyc. 481, 482. In *Providence Tool Company v. Norris,* 69 U. S. 45, 56, it is stated: ". . . all agreements for pecuniary considerations to control the business operations of the Government . . . are void as against public policy, without reference to the question, whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition . . ."

We cannot agree with the appellant that the arrangement between Borden and Ellis could be classed as a partnership. The Uniform Partnership Act (Act of March 26, 1915, P. L. 18, part II, sec. 6; P.S. 59 sec. 11) states that a partnership is an association of two or more persons to carry on as co-owners a business for profit. It would appear that an indispensable requisite of a

"partnership" is the co-ownership of the business. *City of Wheeling v. Chester,* 134 Fed. 2d 759, C. C. A.; *Schuster v. Largman,* 308 Pa. 520, 162 A. 305. There does not appear to be any "co-ownership" evidenced in the case at bar; rather, each party litigant owned its own business, and the appellant invested nothing in the venture, nor did he contribute any services.

We are of the opinion that the contract involved in this case is against public policy and, therefore, unenforceable.

Judgment is affirmed.