## Kraus v. Naumburg

*Donald W. Vanartsdalen,* for *Vanartsdalen & Pratt,* for plaintiffs.

*Power, Bowen & Valimont,* for defendant.

FULLAM, J., February 10, 1964.—This is an action by two lawyers against a former client to collect a fee. The complaint is in two counts: The first count seeks recovery on the basis of a written contingent fee agreement, and the second count seeks recovery, in the alternative, on the basis of quantum meruit. Defendant's preliminary objections assert that the express contract is against public policy and void, and that the complaint is not sufficiently specific to support a quantum meruit recovery.

The pleadings disclose that on and prior to October 20, 1959, defendant, Dorothy S. Naumburg, and her then husband, Philip H. Naumburg, were having marital difficulties, including "various disputes . . . concerning separation, divorce, property rights, custody of the children, and other matters; and various litigation arose between the parties in the courts of Pennsylvania and elsewhere"; that she had employed one of the plaintiffs, Gilbert J. Kraus, Esq., to represent her generally in these matters, and that Mr. Kraus and defendant agreed to the employment by defendant of the other plaintiff, Edward G. Biester, Jr., Esq., to represent her in these matters, it being understood that the two attorneys would work together in her behalf. Ac-

cordingly, on October 20, 1959, defendant executed a power of attorney and fee agreement, as follows:

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned hereby constitutes EDWARD G. BIESTER, JR., ESQ., Doylestown, Bucks County, Pennsylvania, as her lawful attorney to continue all negotiations, make settlement, receive payments, institute actions at law in any appropriate court or forum and in any and every proper and ethical manner, negotiate for and obtain a property settlement from her husband Philip H. Naumburg to herself and to her three children, hereby ratifying and confirming and sanctioning whatsoever he may do in the premises.

"It is understood that the said attorney shall be entitled to receive as fee for the negotiating and obtaining the said property settlement of two and one half (2½%) percent of any principal sum, the income of which is to be used for the support or maintenance or benefit of the said three children, together with twenty (20%) percent of any cash or principal obtained for the said Dorothy S. Naumburg. It is further understood that the said Dorothy S. Naumburg has advanced by way of a retainer, one thousand ($1000.00) Dollars to be applied to and be deducted from the fees hereinabove referred to."

Although Mr. Biester was the only attorney named in the agreement, it was understood by all parties that both plaintiffs would jointly represent defendant, and that all compensation payable would be divided between them, in such proportion as they deemed proper.

The complaint alleges that:

"9. Pursuant to the terms of employment, Plaintiffs successfully expended their best professional efforts in behalf of Defendant toward obtaining for Defendant a fair property settlement and protecting her legal rights including custody of her children; and Plaintiffs entered into negotiations with Philip H.

Naumburg and his agents and attorneys-at-law. Plaintiffs further did institute, defend and represent Defendant in the Courts of Pennsylvania and elsewhere in various litigation between defendant and her then husband, Philip H. Naumburg. Plaintiffs did also receive from Philip H. Naumburg various offers for a property settlement, which offers were submitted to Defendant".

The complaint further alleges that on an unknown date on or before October 6, 1961, defendant's estranged husband advised her that, if she would discharge her attorneys, he would enter into a property settlement acceptable to her; whereupon, on October 6, 1961, defendant terminated plaintiffs' employment and, on October 25, 1961, entered into a property settlement agreement under the terms of which she has received or will receive cash payments in excess of $250,000. It is alleged that this property settlement was "due directly to the efforts, negotiations and services of the plaintiffs and in accordance with the terms of employment of plaintiffs by defendant". It further appears that the settlement agreement was expressly conditioned upon the approval of the District Court of Santa Fe County, New Mexico, where cross-actions for divorce were then pending between the parties, and its terms were embodied in the final decree of that court, granting defendant an absolute divorce from her former husband on or about October 25, 1961.

Defendant argues that the fee agreement set forth above is contingent upon the procuring of a divorce, or, at any rate, is contingent in amount upon the sum paid to the wife in connection with, and to facilitate, a divorce, and that the fee agreement is, therefore, against public policy and void. The validity of a contract of retainer between attorney and client, and the rights of the parties under such contract, are determined by the laws of the State where the contract was

made: Bennett v. Sinclair Nav. Co., 33 F. Supp. 14, 15 (1940). That some or all of the services contemplated by the agreement were performed outside of Pennsylvania is unimportant, if the enforcement of the contract would be contrary to public policy in this jurisdiction: Kuhn v. Buhl, 251 Pa. 348, 374 (1916).

We have not been referred to and have not discovered any reported decisions in Pennsylvania on this precise question. However, certain general principles helpful to a decision of this question have been established by Pennsylvania decisions in related areas of the law, and there is at least the appearance of uniformity among decisions from other jurisdictions involving substantially the same questions presently at issue.

All reported decisions, including several from Pennsylvania, are in accord with the statement in section 586, Restatement, Contracts:

"A bargain to obtain a divorce, or the effect of which is to facilitate a divorce, is illegal."

See also Shannon's Estate, 289 Pa. 280 (1927); Miller v. Miller, 284 Pa. 414 (1925); Mathiot's Estate, 243 Pa. 375 (1914). But, if the agreement does not have the effect of inducing or facilitating a divorce, the fact that a divorce is somehow involved and related to the agreement does not render the agreement invalid. In the careful phrasing of the Restatement, Contracts, §584(1)

"A bargain between husband and wife . . . for separation or divorce is illegal; but a bargain between . . . persons who are married . . . made after separation or in contemplation of an immediate separation which takes place as contemplated, for a division of assets or for future maintenance or alimony, is legal if the bargain is a fair one in view of the circumstances of the parties".

And see Miller v. Miller, supra. It has been held that a bequest to a married person in trust, but with provision for termination of the trust and outright gift of principal to the same person in the event of termination of the marriage by death of the spouse or by divorce, is valid: Rininger's Estate, 305 Pa. 203 (1931) ; Vetter's Estate, 308 Pa. 447 (1932). Indeed, in the last cited case, the court held that the beneficiary could not lay the groundwork for termination of the trust by obtaining a divorce with the intention of remarrying the spouse after obtaining the principal of the legacy; only a genuine, permanent divorce would suffice. In the Rininger case, supra, where the issue of the validity of the condition on the bequest was squarely raised and decided, it was pointed out that the intent and effect of the condition was not necessarily to induce a breakup of the marriage; the testator may have been trying to benefit the beneficiary's dependent spouse by assuring the family an income so long as the dependency status existed. However, if the testator's purpose in imposing the condition was to encourage a divorce, the condition is void: Fisher Estate, 29 D. & C. 2d 526 (1962) ; Morton Estate, 13 D. & C. 2d 148; Mayer v. McGraw, 10 York 5; Justus's Estate, 5 D. & C. 749.

Federal gift tax regulations exempt from gift tax lump-sum property settlements between spouses only if the parties become divorced within two years thereafter (Internal Revenue Code of August 16, 1954, §2516, P. L. 591), yet no one would seriously contend that the government seeks to encourage divorce. Universally recognized considerations of public policy favor domestic stability and the resolution of marital disputes in accordance with proper standards. However, it would not be correct to state that public policy invariably favors the preservation of a marriage. Rather, the interest of the State is to insure that a marriage is not dissolved except as provided by statute,

namely, for valid and solemn reasons, and this, in turn, means that the State has a legitimate interest in protecting, to some extent and in some areas at least, the parties to a marriage from outside influences which would tend to cause or encourage them to attempt to obviate the legislative policy with respect to termination of marriages. Accordingly, the law will not enforce any agreement which is intended to encourage or enable married persons to circumvent the true purpose of the divorce laws, nor any agreement of which a principal effect would be to encourage or facilitate such circumvention.

It becomes necessary to determine how far these considerations of public policy are applicable in considering the validity of a fee agreement between one spouse and her attorney, and, also, perhaps, whether there are other considerations of public policy involved in this review. As stated above, there are no Pennsylvania decisions on this point. However, in 7 Am. Jur. 2d, Attorneys-at-Law, §217, it is stated, without qualification, that "A fee contract contingent on procuring a divorce, or contingent in amount on the amount of alimony to be obtained, is against public policy and void."

A considerable number of cases from other jurisdictions are referred to in 30 A. L. R. 189, and need not be set out at length here. See also 33 L. R. A. (n. s.) 1074; 44 L. R. A. (n. s.) 383. For a more recent survey of the decisions on this point, see Sobieski v. Maresco, 143 S. 2d 62 (Fla. App., 1962). The leading cases are also thoroughly reviewed and discussed in the case of In re Smith, 42 Wash. 2d 188, 254 P. 2d 464 (1953).

The general rule is somewhat more narrowly expressed in Restatement, Contracts, §542(2):

"A bargain to conduct a criminal case or a proceeding for divorce or annulment of marriage in consideration of a promise of a fee contingent on success is il-

legal, but a bargain to endeavor to enforce by litigation or otherwise any other kind of claim in consideration of such a promise is not, because of that single fact, illegal."

And in 17 C. J. S., Contracts, 235, it is stated that an agreement as to compensation for legal services in contemplation of divorce ". . . is invalid if it involves the personal interest of the attorney in preventing a reconciliation between the parties, as where it is partially or completely contingent on success, or is measured by the amount of alimony or property secured. . . ."

In virtually all of the cases and authorities cited above, the sole basis of the rule is said to be, in substance, the rationale set forth in 30 A. L. R. 188:

"It is the policy of the law when differences arise between parties to a marriage that no obstacle should be placed in the way of their reconciliation. Consequently, it is not fitting that it should be for the interest of an attorney that there should be no reconciliation . . ."

Since this is a case of first impression in this jurisdiction, it is permissible for us to analyze the basis of the rule before accepting and applying it.

In our view, it does not necessarily follow that the contingent feature of a fee contract provides any greater inducement to an attorney to prevent reconciliation than any other type of fee arrangement. As a practical matter, in virtually every divorce case the attorney's fee will be higher if the case is completed than if the parties become reconciled. It is certainly not unusual, nor is it subject to criticism, for an attorney to require payment in full, in advance, in divorce cases. But, theoretically, according to the reasoning quoted above, this gives rise to an interest on the part of the attorney in preventing reconciliation, because, in the event of reconciliation, he might have to refund part of the fee. By the same token, the client

who has paid in full for a divorce might be induced thereby to refuse a reconciliation, as this would involve the risk of having wasted some money. Indeed, it can be argued that, from the client's standpoint, reconciliation is far more likely in a contingent fee situation, since a reconciliation would save the payment of an attorney's fee. In this connection, it is interesting to note that, with respect to contingent fee agreements in other types of litigation, it is generally held that, if the client discharges the attorney before completion of the litigation, the attorney is entitled to compensation on the basis of quantum meruit if the contingency has not occurred and is entitled to enforce the contingent fee agreement if the contingency has occurred: Christman Estate, 165 Pa. Superior Ct. 45 (1949); Thole v. Martino, 56 Pa. Superior Ct. 371 (1914); Brightly v. McAleer, 3 Pa. Superior Ct. 442 (1897); Powers v. Rich, 184 Pa. 325 (1898). And see Restatement, Contracts, §350, comment (a), illustration 1.

When an attorney represents a wife who has no estate of her own, the attorney's compensation is almost always contingent in fact, regardless of the form of the compensation agreement. For a lawyer to tell his client, "if you obtain funds from your husband by property settlement or alimony, I will send you a bill for X dollars" is scarcely distinguishable from telling the client "I will send you a bill for X dollars, but I know perfectly well that unless you obtain money from your husband by property settlement or alimony, you will not be able to pay my bill". Such fine distinctions in phraseology have no place in modern jurisprudence: Rininger's Estate, supra.

Whatever may be one's personal attitude toward divorce, the fact remains that the legislature has provided for divorce and has specified the grounds upon which divorce may be obtained. This constitutes a fair

recognition that, under certain circumstances, the termination of the marriage contract, insofar as its legal effect is concerned, is not contrary to public policy. And it cannot be seriously suggested that considerations of public policy should negative the availability of the remedy to deserted and temporarily impecunious spouses. Moreover, apart from the question of divorce itself, there are other public policy considerations which should be brought into play. Clearly, the public has an interest in seeing to it that husbands are required to support their children, and that questions of custody are decided solely on the basis of the welfare of the children involved. And few people would contend that the protection of property rights, even between spouses, is contrary to public policy.

To strike down every contingent fee agreement in domestic relations cases would be to ignore valid considerations of public policy in deference to the policy in favor of reconciliations, on the basis of the untenable assumption that contingent fee agreements necessarily discourage reconciliations. Such a general rule seems also to be based upon highly questionable assumptions regarding human motivation. We venture to suggest that there are very few salvageable marriages which the importunings of an attorney could succeed in destroying. More to the point, we are satisfied that very few, if any, attorneys would think of discouraging the reconciliation of estranged spouses, and that any attorney who is so fee hungry as to do so would be as likely to do so for a fixed fee as for a contingent fee.

In short, we believe that while the rule prohibiting contingent fee arrangements in domestic relations matters is frequently stated in broad terms, its application should depend upon the facts of the particular case. We believe the better view is that expressed by the Supreme Court of California in the case of

Krieger v. Bulpitt, 40 Cal. 2d 97, 251 P. 2d 673 (1953), namely, that the court should carefully scrutinize the facts in each case to determine whether or not the contingent fee agreement in question is, in fact, contrary to public policy. In the Krieger case, a husband retained attorneys to defend a divorce action brought by his wife, with the understanding that the attorneys were to receive, as their fee, a certain percentage of the husband's share of the community property obtained for him. The lower court held the contingent fee agreement void as against public policy, but the Supreme Court reversed and allowed recovery.

We believe this approach is in accord with the decisions of our Pennsylvania appellate courts in the general field of contingent fees and illegality of contracts. Contingent fee agreements are not illegal per se, but are often beneficial in enabling a poor man to obtain justice: Richette v. Pennsylvania R. R. Co., 410 Pa. 6, 20-1 (1963); Williams v. Philadelphia, 208 Pa. 282 (1904); Fulton v. Lancaster Co., 162 Pa. 294 (1894). However, such agreements in some situations are so clearly against public policy as to be illegal and void as a matter of law; for example, where the contingency is the procuring of legislation, Spalding v. Ewing, 149 Pa. 375 (1892); the withdrawal of a criminal prosecution, Ormerod v. Dearman, 100 Pa. 561 (1882); or the discharge of a draftee, Bowman v. Coffroth, 59 Pa. 19 (1868). In other situations, the surrounding circumstances must be examined to determine whether, in fact, the agreement in question contravenes public policy; for example, a champertous contract with a professional heir-hunter: Frazier Estate, 75 D. & C. 577 (1951). Compare Kribbs v. Jackson, 387 Pa. 611 (1957); Warnock v. Philadelphia Trust Company, 69 Pa. Superior Ct. 589 (1918); Crooks' Estate, 316 Pa. 285, 286-87 (1934); Bruno v. Cara, 116 Pa. Superior Ct. 544 (1935); O'Hara v.

J. W. Rex Co., 17 D. & C. 2d 191 (1958); Abrahams v. Epstein, 69 D. & C. 238 (1949).

In Peyton v. Margiotti, 398 Pa. 86 (1959), an agreement for the payment of an attorney's fee contingent upon the granting of a pardon was held to be illegal and void as a matter of law, but the surrounding circumstances which strongly indicated its impropriety in fact were also stressed, and the court noted (at page 90) that "in criminal cases the rule is stricter because of the danger of corrupting justice." In a concurring opinion by Justice (now Chief Justice) Bell, joined in by Justice McBride, the view was expressed that a fair and reasonable contingent fee for services in obtaining a pardon is not illegal or against public policy but that, under the particular circumstances, the fee in question was obviously unreasonable and improper.

The propriety of all other types of agreements relating to divorce, etc., is determined on a case by case basis, with each case being decided on its own facts: Miller v. Miller, supra. Compare Willetts v. Willetts, 97 Pa. Superior Ct. 317 (1929). In a divorce action itself, the amount of counsel fees allowed to the wife is fixed by the court after considering all of the circumstances of the particular case, including the financial condition of the parties: Meinel v. Meinel, 117 Pa. Superior Ct. 263, 266 (1935).

Amicable settlement of disputes over alimony and property division are to be encouraged, so that discord and bitterness may be minimized: Freedman, Law of Marriage and Divorce in Pennsylvania, §415.

In the case now before us, the contingent fee agreement does not mention divorce. It does not mention alimony or support payments for the wife herself. The property settlement which was ultimately arrived at was not, by its terms, conditioned upon the *granting* of a divorce; the agreement provides merely that it is not

to become effective until approved by the New Mexico court in which certain divorce proceedings were apparently then pending. Since a considerable part of the settlement agreement deals with custody of the children of the parties and their education and support, as well as providing for the continued jurisdiction of the New Mexico court over the question of custody of the children (the agreement recites that the children had previously been made wards of the New Mexico court), it is certainly not surprising that the agreement was made conditional upon the approval by that court. It cannot be said as a matter of law that the property settlement agreement was collusive, or that it was designed or intended to induce or facilitate the granting of a divorce. Whether it was, in fact, tainted with illegality in any of these respects is a question to be determined at trial, if necessary. In any event, it is at least arguable whether these plaintiffs would be chargeable with any improper or illegal features of the settlement agreement which was entered into subsequent to their discharge.

It is our conclusion that the written fee agreement is not invalid as a matter of law. Defendant's demurrer will, therefore, be overruled.

The alternative claim for recovery on the basis of quantum meruit is not as detailed as it might be, but we believe it is sufficiently specific within the requirements of the procedural rules. Discovery is available to defendant should further information be desired.

### ORDER

And now, February 10, 1964, defendant's preliminary objections are overruled and dismissed, with leave to file an answer within 20 days.