## Carr v. Summers

*James Francis Ryan*, for plaintiff.

CRUMLISH, J., February 18, 1947.—This is an action to determine plaintiff's rights to the sum of $5,828 which he found during the course of his duty as a Philadelphia police officer. The facts are admitted.

On January 4, 1945, three men were arrested for the theft of unissued United States Government ration books which had been stored in the basement of the Board of Education Building. Several days later, the director of public safety was informed through an anonymous telephone call that a search of the storeroom would produce additional evidence. On January 7, 1945, plaintiff, who was then and still is the director's bodyguard and chauffeur, and another police officer, together with representatives of the Office of Price Administration, visited the building and searched the storeroom. During the course of this search plaintiff moved a crate and found, under it, the sum of $5,828 in bank notes and United States currency. He reported the finding to the director of public safety. Subsequently, plaintiff appeared with the money at the magistrate's hearing of the three men, and all three, individually and through their counsel, denied any ownership, knowledge of, or claim to the money. At their trial in a Federal district court, plaintiff again appeared as a witness, but the court

refused to hear testimony as to the finding of the money, or admit the money in evidence, as there was nothing to connect the money with the three accused. After three trials, the men were convicted and sentenced to prison terms. The bills of indictment against them which had been found by the Philadelphia grand jury were nol prossed on December 10, 1946, on the ground that the action concerned property of the United States Government and the accused had already been tried and convicted for it.

In a letter dated December 9, 1946, the secretary of the board of education notified the director of public safety that:

"In the opinion of C. Brewster Rhoads, Esq., solicitor, the board of public education does not have a legal claim to this money. In accordance with this opinion may I advise you that the board of public education will not make any claim."

The United States Attorney for the Eastern District of Pennsylvania advised plaintiff on August 21, 1946, as follows:

"Since this money was not found on Government property, nor by a Government agent, and is not in the Government's possession but is in the possession of the police department of the City of Philadelphia, and since it cannot be proved that it was the proceeds of the sale of O. P. A. ration coupons, the Government has no claim to the money."

At the time the money was found, and in subsequent accounts of the hearings and trials, wide publicity was given through newspaper reports to the fact and the circumstances of the finding of the money, but no person has at any time made claim thereto.

The money is now in the possession of the chief clerk of the bureau of police, defendant in this action, whose answer to the complaint reads as follows:

"Defendant admits, upon information and belief, all of the averments in the complaint filed in the above action.

"Defendant, as chief clerk of the bureau of police, Department of Public Safety of the City of Philadelphia, avers that there is no regulation or rule of the bureau of police requiring the payment of money found by any police officer into any police pension or retirement fund, or any other fund. Defendant as chief clerk of the bureau of police is required to hold all moneys which are or may be evidence in any case until disposition thereof by court order. Money unclaimed and money confiscated in gambling operations is deposited by defendant in the city treasury."

Plaintiff has moved for judgment on the pleadings.

An examination of the reports reveals very few Pennsylvania cases discussing the law of finders. One of the earliest of these is Tatum v. Sharpless, 6 Phila. 18 (1865). In that case a passenger car conductor brought an action against the person in charge of the car company to whom he had delivered a pocketbook containing over $100 which the conductor had found on the car when he examined it at the end of the route. Defendant had advertised the finding, but no one claimed the pocketbook. The action was brought after plaintiff's demand, made more than a year following the discovery, was refused by defendant on advice of counsel. The trial judge instructed the jury to bring a verdict for plaintiff and reserved the "law arising thereon" for the opinion of the court en banc. Judgment on the reserved points was ordered for plaintiff. Stroud, J., gave the opinion of the court, after argument on both sides, saying at page 19:

"A principal point ruled in *Armory v. Delamirie*, 1 Strange 504, was that the finder of a chattel, though he does not by such finding acquire an absolute property or ownership, yet he has such a property as will

enable him to keep it against all but the rightful owner, and consequently may maintain trover.

"Although this was the ruling of a single judge at *nisi prius*, it has been thoroughly acquiesced in ever since as a settled principle of the common law."

Judge Stroud carefully considered the leading cases from other jurisdictions which involved a finding by an employe on the property of his employer, and concluded, at page 20, that:

"The important point in these decisions was that the *place* in which a lost article is found does not constitute any exception to the general rule of law that the finder is entitled to it as against all persons except the owner.

"The right of the finder depends on his honesty and entire fairness of conduct. The circumstances attending the finding must manifest good faith on his part. There must be no reason to suspect that the owner was known to him or might have been ascertained by proper diligence."

Justice Trunkey, in an opinion allowing a hotel servant to recover from the proprietor money which the servant had found in the public parlor of the hotel, elaborated on the rule when he said in Hamaker v. Blanchard, 90 Pa. 377, 379 (1879):

"It seems to be settled law that the finder of lost property has a valid claim to the same against all the world, except the true owner, and generally that the place in which it is found creates no exception to this rule. But property is not lost, in the sense of the rule, if it was intentionally laid on a table, counter or other place, by the owner, who forgot to take it away, and in such case the proprietor of the premises is entitled to retain the custody. Whenever the surroundings evidence that the article was deposited in its place, the finder has no right of possession *against the owner of the building*." (Italics supplied.)

The opinion of Woodruff, J., in Mathews v. Harsell, 1 E. D. Smith's Reg. (N. Y.) 393 (1852), was considered by the court. That case was an action by a domestic against a third party for return of certain notes which had been found by plaintiff in her mistress' home and handed to the mistress, who in turn entrusted them to defendant to ascertain their value. The mistress did not contest plaintiff's claim, and admitted that she had acted for plaintiff when she delivered the notes to defendant. Judgment was for plaintiff. Justice Trunkey, commenting on certain dictum in the case, said at page 379:

"True, Woodruff, J., says: 'I am by no means prepared to hold that a house-servant who finds lost jewels, money or chattels, in the house of his or her employer, acquires any title even to retain possession against the will of the employer. It will tend much more to promote honesty and justice to require servants in such cases to deliver the property so found to the employer, for the benefit of the true owner.' To that remark, foreign to the case as understood by himself, he added the antidote: 'And yet the Court of Queen's Bench in England have recently decided that the place in which a lost article is found, does not form the ground of any exception to the general rule of law, that the finder is entitled to it against all persons, except the owner.' His views of what will promote honesty and justice are entitled to respect, yet many may think Mrs. Barmore's method of treating servants far superior."

Batteiger v. Pennsylvania Company, 64 Pa. Superior Ct. 195 (1916), is a more recent case on the subject. A passenger found a purse on an unoccupied train seat and handed it over to the conductor who turned it in to the treasurer of the company. No claim for the purse having been made after advertisements were published by the company, plaintiff-

finder demanded its return, and brought the action in assumpsit when defendant refused. In that case, Orlady, P. J., affirming a verdict and judgment for plaintiff, said at page 197:

"The rule of law in this case is not clearly defined, owing to possible inferences to be drawn from the facts in special cases, and refined distinctions are often made to determine whether the article found has been lost, or mislaid by the owner. The subject has been considered by many judges, and the general rule appears to be that 'Goods are lost in legal sense of the word, only when the possession has been casually and involuntarily parted with, as in the case of an article accidentally dropped by the owner. If the owner of an article purposely lays it down, intending to take it up again immediately, and he forgets it, and leaves it where it is laid . . . or if he lays it away and then forgets where he puts it, such article is not lost, but merely mislaid, and therefore the incidents of lost goods do not attach, ——and further, that the place where an article may be found will not affect the doctrine, that the finder has a valid claim to it as against all the world, except the true owner, though the place may be a material fact in determining whether the article has been lost in the legal sense of the term: 19 Am. & Eng. Enc. of L., Lost Property."

In the case before us, as in the Batteiger case, supra at 197, 198:

"The facts . . . do not aid us in drawing any satisfactory conclusion, as to whether (the money) was lost or mislaid, *even if such a distinction would be necessary to be made* . . . there is nothing to indicate whether it was involuntarily lost, or temporarily mislaid by the real owner, or designedly placed by an alarmed thief, where it would likely be found, and who thus sought to relieve himself of its possession, from compunction of conscience or fear of detection, or, to pass it on to a confederate who was interrupted by

the presence of the finder (or by arrest). The real owner has not claimed it, after the public has been notified through the usual channels, that he should come forward and prove his title to the property. *So far as this case is concerned, he must be treated as having lost (the money).*" (Italics supplied.)

The rule is clear and well established. Our problem is to determine whether it should be different when a police officer is the finder. In New York, the policeman-finder is entitled to possession against all but the owner. However, he is considered to have "relinquished any right he might have had (if a civilian)" when he joins the force because the New York City Charter and the rules and regulations of the police department provide that any money or article found by policemen and not claimed within a fixed time shall go to the police pension fund: Majewski v. Farley, 203 App. Div. 77, 196 N. Y. S. 508, 510 (1922).

In Noble v. City of Palo Alto, 89 Cal. App. 47, 264 Pac. 529 (1928), a California court did not permit a police chief to retain the proceeds from the sale of unclaimed bicycles which had been found by himself and other police officers on the streets and highways of the city. The court there held that the police officer was merely doing his duty when he took possession of the bicycles and public policy opposed his receiving additional compensation for doing his duty. It is apparent, despite the court's language, that the decision was intended to put a stop to what it felt was a personal monopoly that the chief had been able to engage in because of his official position. This case is readily distinguished from the instant one. Here there is no course of conduct that can be said to be contrary to public policy.

A judgment for plaintiff in the case before us would not conflict with our policy against police officers receiving additional compensation for performing their

duty. That policy is intended to avoid the possibility of bribery or of divided loyalty, and to keep the police independent of any person other than their superiors. It is intended to discourage them from demanding a fee from individual members of the public whom they might be called upon to serve, and to prevent discrimination against those less able to pay. In line with this policy, we have a provision in Philadelphia that money which would normally be paid to police officers detailed for duty at sporting events or other private affairs be paid into the police pension fund. If the policy applied to found articles, it would be reasonable to expect that the legislature or city council would have extended this provision to include them, as was done in New York.

Finally, the circumstances under which the money was found should not prevent recovery. In the cases in which an employe finds lost articles, the finding is usually in the course of his duty, and the opportunity to find the article generally results from the nature of his employment. The conductor, at the end of his trip, examines his car for items that might have been left behind by departing passengers; the house-servant, after a party, clears the tables and cleans the floors, incidentally looking for things that might have been dropped by the guests. If they find something, and it is unclaimed, the law permits them to retain or recover from the bailee that which was found. "A rule of law ought to apply to all alike": Hamaker v. Blanchard, supra at 380; and we shall not apply a different rule to a police officer if he has acted honestly and with "entire fairness of conduct" and the circumstances attending the finding "manifest good faith on his part". Fundamentally, these are the things upon which the right of the finder depends: Tatum v. Sharpless, supra at 20.

Accordingly, judgment on the pleadings is directed to be entered for plaintiff.