522 A.2d 691

Keystone Sanitation Co., Inc., et al. *v.* Union Township. Keystone Sanitation Co., Inc., Appellant.

Union Township, Appellant *v.* Keystone Sanitation Co., Inc., et al., Appellees.

522

Argued November 20, 1986, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Donald H. Yost, Blakey, Yost, Bupp & Schaumann,* for appellant/appellees.

*James T. Yingst, Buchen, Wise, Dorr & McKonly,* for appellee/appellant.

OPINION BY JUDGE COLINS, March 12, 1987:

On September 13, 1984, Union Township (Township) in Adams County, Pennsylvania, adopted a Waste Disposal Privilege Tax Ordinance imposing a seven per cent (7%) tax on the gross receipts of businesses engaged in waste disposal. These businesses include sanitary landfills, treatment facilities, and refuse disposal facilities. At the time of the enactment of the ordinance, there were two facilities in the Township which fit within the above-described class of taxpayers, the Borough of Littlestown Sewage Treatment Plant and the Keystone Sanitation Co., Inc. (Keystone). It is undisputed that the Borough of Littlestown Sewage Treatment Plant is exempt from the subject tax because it is owned and operated by the Borough of Littlestown, thus leaving Keystone as the sole subject of the tax.

Pursuant to Section 6 of The Local Tax Enabling Act (Tax Act), Act of December 31, 1965, P.L. 1257, 53 P.S. §6906, Keystone filed a Petition for Appeal in the Court of Common Pleas of Adams County.[1] The trial court conducted an evidentiary hearing on September 12 and 13, 1985, and on January 10, 1986, filed its opinion. The trial court's order became final on February 13, 1986, after the trial court dismissed Motions for Post-Trial Relief filed by both parties. The order of the trial court is as follows:

AND NOW, this 10th day of January, 1986, the tax is declared to be excessive and is reduced to two per cent.

Both parties have filed cross-appeals with this Court.

---

[1] Other individuals who felt that they were affected by the tax joined Keystone in its appeal.

The issues presented by this appeal are:

(1) Whether the tax in question is preempted by the Solid Waste Management Act (Solid Waste Act), Act of July 7, 1980, P.L. 380, 35 P.S. §§6018.101-1003;

(2) Whether the trial court erred in determining the tax in question was excessive;

(3) Whether the trial court erred in sustaining the tax at the rate of two per cent (2%) after finding the tax excessive.

We shall address these issues *seriatim*.

When laws, such as the Solid Waste Act, are silent as to whether municipalities are or are not permitted to regulate a field also regulated by the Commonwealth, the issue of whether municipal action is permissible must be determined by an analysis of the provisions of the relevant legislation in order to ascertain the probable intention of the legislature in that regard. *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 412 A.2d 1366 (1980). The purpose of the Solid Waste Act is as follows:

> The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution and economic loss, and cause irreparable harm to the public health, safety and welfare, it is the purpose of this act to:
>
> (1) establish and maintain a cooperative State and local program of planning and technical and financial assistance for comprehensive solid waste management;
>
> (2) encourage the development of resource recovery as a means of managing solid waste, conserving resources, and supplying energy;
>
> (3) require permits for the operation of municipal and residual waste processing and dis-

posal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment, and disposal;

(4) protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage and disposal of all wastes;

(5) provide a flexible and effective means to implement and enforce the provisions of this act;

(6) establish the Pennsylvania Hazardous Waste Facilities Plan, which plan shall address the present and future needs for the treatment and disposal of hazardous waste in this Commonwealth;

(7) develop an inventory of the nature and quantity of hazardous waste generated within this Commonwealth or disposed of within this Commonwealth, wherever generated;

(8) project the nature and quantity of hazardous waste that will be generated within this Commonwealth in the next 20 years or will be disposed of within this Commonwealth, wherever generated;

(9) provide a mechanism to establish hazardous waste facility sites;

(10) implement Article I, section 27 of the Pennsylvania Constitution; and

(11) utilize, wherever feasible, the capabilities of private enterprise in accomplishing the desired objectives of an effective, comprehensive solid waste management program.

Section 102 of the Solid Waste Act, 35 P.S. §6018.102.

It is clear that the intent of the legislature, in enacting the Solid Waste Act, was to protect the environment and hence the public welfare. It was not the legislature's intent to regulate the business aspect of solid

waste management. Further, there has been no allegation that this particular tax will destroy Keystone's business. While this Court recognizes that the power to tax involves the power to destroy, *McCulloch v. Maryland,* 4 Wheat. 316 (1819), reasonable taxation of non-preempted fields is permissible. *See Yorco Agency, Inc. v. Casaletto,* 88 Pa. Commonwealth Ct. 243, 488 A.2d 1206 (1985). So long as the tax imposed is not so excessive so as to impinge on the legislative scheme, it is not per se invalid.

In order for preemption to occur, the legislative scheme must be pervasive. In *Allegheny Valley Bank,* the Supreme Court held that the soundness of banking institutions was so vital to the public interest that a local tax upon a percentage of banking revenues would infringe upon the delicate nature of banks, "so that even sound banks may be in jeopardy of collapse when one or more in the general area fail." *Id.* at 551; 412 A.2d at 1370. In the instant matter, the pervasiveness found in *Allegheny Valley Bank* is absent, as the Solid Waste Act does not impose statutory requirements and standards upon all aspects of solid waste management, including its business aspects. Therefore, we hold that the Solid Waste Act does not preempt local taxation of businesses engaging in solid waste management activities.

Examining the validity of the tax itself, we note that Union Township enacted the taxing ordinance pursuant to the Tax Act, popularly known as the "tax anything" act. This Act specifically provides, in pertinent part:

It shall be the duty of the court to declare the ordinance and tax thereby imposed to be valid *unless it concludes the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable;* but that the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the

rates of the tax. *The court may declare invalid all or any portion of the ordinance or of the tax imposed or may reduce the rates of tax.* (Emphasis supplied.)

Section 6 of the Tax Act, 53 P.S. §6906. Our scope of review in this case is whether the trial court abused its discretion in finding that the tax was excessive or unreasonable. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

While the trial court in its order specifically states that the tax is "excessive," its decision appears to support a conclusion that the tax is "unreasonable:"

> Under the evidence, it is clear that the tax is unreasonable because there is no need nor any plans for its revenue. It is not a true revenue measure but is, in fact, a form of regulation. Therefore, the tax must be invalidated.
>
> Although we have previously held that the two per cent level on retail sales is not a standard by which the tax can be declared unreasonable, it is clearly a standard by which the tax can be declared reasonable. The Act, supra, empowers the Court to reduce taxes found excessive. The situation before us may not have been what was contemplated, but the Court will still exercise the power.
>
> We, therefore, will invalidate the tax and reduce it to two per cent. By doing this, we do not mean to suggest that this is the highest permissible level. If the Township properly plans and properly budgets, it may reenact the tax at a higher level.

There is apparently some confusion over the terms "excessive or unreasonable" as used in the Tax Act.

While the courts have made no distinction between the two terms, it is clear that by virtue of the "or" used

in the Tax Act, the terms may be exclusive of each other. *See* 1 Pa. C. S. §1903. Thus a tax may be reasonable, but excessive, in which case it would be appropriate to reduce the rates of tax. However, if a tax is unreasonable, it is invalid, per se, and a lesser rate will not make it reasonable—only less excessive.

Therefore, keeping in mind that the terms "unreasonable" and "excessive" are separate and distinct terms, we must examine the trial court's opinion to determine whether the tax in this case is either unreasonable or excessive. The trial judge found the tax to be "unreasonable" essentially because it would result in an unnecessarily large surplus in revenue for which Union Township had no need nor for which it had made any plans.

The trial court found, and the record supports, that Union Township anticipated revenues of $80,000 annually from the tax. Based on Keystone's gross receipts for the year 1984 of $2,678,000.00, the tax would provide $187,000 annually. Union Township had not adopted any budget reflecting a need or use for these revenues. It argued, somewhat vaguely, that the money is needed for the future water supply needs in the event the groundwater is contaminated by the landfill, and that the road leading to the landfill is in need of repair. No estimates of the cost of future water supplies were ever submitted into evidence; evidence concerning the cost of the road was submitted showing a cost of $100,000 with a ten to fifteen year life span. It is thus clear that a large surplus from this tax would exist annually. Further, it must be noted that Union Township commenced the calendar year 1984 with accumulated surpluses of all funds of $289,000.[2]

---

[2] Union Township contended before the trial court that these facts should not have been found by the court because the court

In considering whether these facts make the tax in question "unreasonable" or "excessive," we are mindful of the fact that there is no specific limitation imposed by Section 8 of the Tax Act, 53 P.S. §6908, upon this type or variety of tax.

> Section 8 of the Tax Act provides, in pertinent part: No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:
>
> (1) Per capita, poll or other similar head taxes, ten dollars ($10).
>
> (2) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, one mill, by retail dealers in goods, wares and merchandise and by proprietors of restaurants or other places where food, drink and refreshments are served, one and one-half mills; except in cities of the second class, where rates shall not exceed one mill on wholesale dealers and two mills on retail dealers and proprietors. No such tax shall be levied on the dollar volume of business transacted by wholesale and retail dealers derived from the resale of goods, wares and merchandise, taken by any dealer as a trade-in or as part payment for

---

should have decided the issue on the pleadings. In both *Donnelly v. Borough of Media*, 23 Pa. Commonwealth Ct. 115, 351 A.2d 299 (1976) and *Ad Hoc Committee v. Borough of New Brighton*, 80 Pa. Commonwealth Ct. 348, 471 A.2d 609 (1984), this Court held that when it appears from an appeal petition that an appellant is only alleging facts which a court may not consider as a basis for finding a tax excessive or unreasonable, then it is proper to dismiss the petition without an evidentiary hearing. However, Union Township made no motion for judgment on the pleadings. Following the evidentiary hearing, it was only proper for the trial judge to consider all relevant evidence.

other goods, wares and merchandise, except to the extent that the resale price exceeds the trade-in allowance.

(3) On wages, salaries, commissions and other earned income of individuals, one percent.

(4) On retail sales involving the transfer of title or possession of tangible personal property, two percent.

(5) On the transfer of real property, one percent.

(6) On admissions to places of amusement, athletic events and the like, and on motion picture theatres in cities of the second class, ten percent.

(7) Flat rate occupation taxes not using a millage or percentage as a basis, ten dollars ($10).

(8) Occupational privilege taxes, ten dollars ($10).

(9) On admissions to ski facilities, ten percent. The tax base upon which the tax shall be levied shall not exceed forty percent of the cost of the lift ticket. The lift ticket shall include all costs of admissions to the ski facility.

(10) On admissions to golf courses, ten percent. The tax based upon which the tax shall be levied shall not exceed forty percent of the greens fee. The greens fee shall include all costs of admissions to the golf course.

Nonetheless, as the Supreme Court stated in *William Penn*:

Even in such cases, we believe that section 8 provides a valuable starting point. A tax may be outside of the class governed by section 8 but sufficiently similar to a member of that class to support the conclusion that a rate entirely disproportionate to the rates specified by section 8

for the similar tax would be 'excessive and un-reasonable.' Before reaching such a conclusion, a court would need to consider carefully any differences (*e.g.,* in economic impact of the tax, ability of the class of taxpayers to pay, relation of other taxes imposed on the class of taxpayers to the cost of services rendered to them, etc.) suggested by the taxing authority, giving great weight to the judgment of the municipal officials as to the significance of those differences.

*Id.* at 217, 346 A.2d at 293-94. Unfortunately, as none of the Section 8 tax limitations are sufficiently analogous to the present tax, this Court must look to other sources. *Ad Hoc Committee for Keeping New Brighton Progressive v. Borough of New Brighton,* 80 Pa. Commonwealth Ct. 348, 471 A.2d 609 (1984).

Foremost, we will examine general tax principles. Municipal officers are presumed to act properly in furtherance of the public good. *Hyam v. Upper Montgomery Joint Authority,* 399 Pa. 446, 457, 160 A.2d 539, 545, *cert. denied and appeal dismissed,* 364 U.S. 288 (1960). Thus mere underestimation of tax revenues to be gained from a tax is insufficient to justify judicial review of the budgetary calculations and revenue estimations of a legislative body. *Donnelly v. Borough of Media,* 23 Pa. Commonwealth Ct. 115, 351 A.2d 299 (1976); *New Brighton.* In *Donnelly* we stated: "There is nothing in the record which suggests arbitrary and capricious action indicative of a wanton disregard of public duty." *Donnelly* at 119, 351 A.2d at 302.

The implication is, of course, that if a wanton disregard of public duty existed, the court would be justified in examining the legislative body's discretion in imposing the tax. The question thus becomes whether the vaguely articulated reasons for the tax in this case rise to the level of a wanton disregard of public duty. The

controlling question in this regard is whether the township has given anything to its citizens for which it can ask return. *See Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444 (1940). The only benefit to which a taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. *See Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 522 (1937). Provided that the general community receives some benefit from the imposition of a tax, it cannot be said to be in disregard of public duty. *Airway Arms, Inc. v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982), *appeal dismissed,* 459 U.S. 1094 (1983).

Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process under the Fourteenth Amendment to the United States Constitution, but is also an arbitrary form of classification in violation of equal protection and state uniformity standards. *Allegheny County v. Monzo,* 509 Pa. 26, 38, 500 A.2d 1096, 1102 (1985). While we are not here concerned with unraised constitutional issues, we believe that the analysis given in *Allegheny County* serves to highlight the difference between a reasonable and an unreasonable tax. Because a legislative body has the discretion to impose taxes and set tax rates, a tax is only unreasonable when the benefit received by the general public is so palpably disproportionate to the burden imposed by the tax as to indicate a capricious disregard of public duty by the legislative body.

Under this analysis, we must conclude that the tax imposed upon Keystone is unreasonable. That the Township derives benefit from the imposition of this tax in the form of a fiscal surplus is readily apparent. Equally apparent on this record is the disproportionately

great burden borne by Keystone in the creation of this surplus. Inconclusive arguments by the Township pertaining to potential ground water contamination and necessary road repair occasioned by Keystone cannot justify the imposition of this tax upon the landfill. It would not be entirely inaccurate to state that the Township has imposed a tax merely for the sake of taxation. This is an unreasonable tax as a matter of law.

Because the tax is unreasonable, it is invalid at any rate. The trial court's attempt to render the tax reasonable by reducing its rate was improper. We do not mean to imply that any tax upon Keystone must be invalidated. On the contrary, if the Township properly plans, budgets, and demonstrates a need for the anticipated revenue, it may tax Keystone in accordance with such need.

Accordingly, we affirm the trial court's order insofar as it holds the tax imposed by the Township is invalid and reverse the order insofar as it reduces said tax to two per cent.

## ORDER IN 520 C.D. 1986

AND NOW, March 12, 1987, the order of the Court of Common Pleas of Adams County in the above-captioned matter is hereby affirmed insofar as it holds that the tax imposed by Union Township is invalid, and reversed insofar as it reduces said tax to two per cent.

## ORDER IN 592 C.D. 1986

AND NOW, March 12, 1987, the appeal of Union Township in the above-captioned matter is dismissed.