589 A.2d 767

**GRAND CENTRAL SANITARY LANDFILL, INC. and Grand Central Sanitation, Inc., Appellants,**

**v.**

**TOWNSHIP OF PLAINFIELD, Board of Supervisors of Plainfield Township and Carol J. Kracht, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1990.

Decided April 1, 1991.

Reargument Denied May 14, 1991.

Anthony J. Martino, with him, Leonard N. Zito, Zito, Martino and Karasek, Bangor, for appellants.

John Molnar, with him, Alan B. McFall, Cassebaum, McFall & Molnar, P.C., Bangor, for appellees.

Before COLINS and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

Appellants, Grand Central Sanitary Landfill, Inc. and Grand Central Sanitation, Inc. (collectively, Grand Central),

owners and operators of a municipal waste landfill located in Plainfield Township, Northampton County (Township), challenge a determination by the Court of Common Pleas of Northampton County that a waste disposal tax, imposed by the Board of Supervisors of Plainfield Township (Board) upon all waste disposal businesses within the Township, is reasonable and, as reduced, not excessive.

On January 17, 1985, the Board enacted a Waste Disposal Business Privilege Tax Ordinance pursuant to The Local Tax Enabling Act (Tax Act), Act of December 31, 1965, *as amended*, P.L. 1257, 53 P.S. §§ 6901–6924, which generally allows certain political subdivisions to levy, assess, and collect taxes for general revenue purposes on persons, transactions, occupations, privileges, subjects, personal property, and transfers of or interests in real property within the limits of such political subdivisions. Although the resulting waste disposal tax applies to all waste disposal businesses within the Township, Grand Central operates the only waste disposal business therein.

When promulgated, the waste disposal tax imposed a tax at the rate of three percent of the monthly gross receipts of the affected businesses and required the filing of a monthly tax return. On December 2, 1986, the Board increased the tax to four percent of gross receipts; and on April 1, 1987, the tax was increased to five percent of gross receipts. Pursuant to this tax, Grand Central paid the Township $91,453 in 1985, $161,758 in 1986, and $661,311 in 1987. Thereafter, upon advice of counsel, Grand Central ceased paying the tax.

In 1988, the Township, Board, and Carol Kracht, Secretary of the Township, filed a declaratory judgment action with a count "in Assumpsit" against Grand Central seeking to have the waste disposal tax declared valid and to recover unpaid back taxes.[1] A non-jury trial was held in September, 1989; and on June 19, 1990, the trial court issued an order

---

**1.** Grand Central also filed a declaratory judgment action concerning the waste disposal tax. Both actions were consolidated, and Grand Central's action was eventually discontinued.

finding the waste disposal tax to be valid but excessive, and accordingly reduced the tax to a rate of three percent. Both sides filed post-trial motions which were denied on September 14, 1990. Grand Central thereupon filed the instant appeal to this Court.

Grand Central raises the following issues: (1) whether the trial court erred in concluding that the waste disposal tax was not unreasonable when the record allegedly reflects that (a) the benefit received by the public from the tax is palpably disproportionate to the burden imposed by the tax, thereby indicating that the Township acted in capricious disregard of its public duty, and (b) the tax was enacted without evidence of need or a plan for spending; and (2) whether the tax, even as reduced by the trial court, is excessive in that the revenue generated will exceed that generated by a host municipality fee imposed upon operators of municipal waste landfills by the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101), Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101–4000.1904.[2] In cases where the court of common pleas is the finder of fact, this Court's scope of review is limited to determining whether or not the court committed an error of law or based its findings on substantial evidence. *Hando v. Commonwealth*, 84 Pa.Commonwealth Ct. 63, 478 A.2d 932 (1984). Questions of credibility and the resolution of testimonial conflicts are for the trial court to decide. *Northview Motors, Inc. v. Commonwealth*, 128 Pa.Commonwealth Ct. 54, 562 A.2d 977 (1989), *appeal denied*, 525 Pa. 605, 575 A.2d 570 (1990).

Grand Central's contention that the waste disposal tax is unreasonable and excessive is grounded in the Legislature's directive in Section 6 of the Tax Act, 53 P.S. § 6906, which states that:

2. Section 1301 of Act 101, 53 P.S. § 4000.1301, effective within sixty days of July 28, 1988, imposes a "host municipality benefit fee" upon operators of municipal waste landfills or resource recovery facilities to be paid to host municipalities in the amount of $1 per ton of weighed solid waste or $1 per three cubic yards of volume-measured solid waste for all solid waste received at a landfill or facility.

[i]t shall be the duty of the court to declare the ordinance and tax thereby imposed to be valid *unless it concludes the ordinance is unlawful or finds the tax imposed is excessive or unreasonable;* but that the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax. The court may declare invalid all or any portion of the ordinance or of the tax imposed *or may reduce the rates of the tax.* (Emphasis supplied.)

In *Keystone Sanitation Co., Inc. v. Union Township,* 104 Pa.Commonwealth Ct. 521, 522 A.2d 691 (1987), this Court conducted an extensive analysis of factors to be considered when determining whether a tax enacted pursuant to the Tax Act is reasonable or unreasonable; and those factors pertinent to this case are as follows:

Foremost, we must examine general tax principles. Municipal officers are presumed to act properly in furtherance of the public good. . . .

The implication is, of course, that if a wanton disregard of public duty existed, the court would be justified in examining the legislative body's discretion in imposing the tax. . . . The controlling question in this regard is whether the township has given anything to its citizens for which it can ask return. . . . The only benefit to which a taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. . . . Provided that the general community receives some benefit from the imposition of a tax, it cannot be said to be in disregard of public duty. . . .

Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process ... but is also an arbitrary form of classification in violation of equal protection and state uniformity standards. . . . [These concerns serve] to highlight the difference between a reasonable and an unreasonable tax. Because a legislative body has the

discretion to impose taxes and set tax rates, a tax is only unreasonable when the benefit received by the general public is so palpably disproportionate to the burden imposed by the tax as to indicate a capricious disregard of public duty by the legislative body. (Citations omitted.)

*Id.,* 104 Pa.Commonwealth Ct. at 531–32, 522 A.2d at 696–97. In *Keystone,* a case remarkably similar to the case *sub judice* in that it involved a waste disposal tax affecting only one disposal facility, this Court found the tax at issue to be unreasonable because the municipality imposed the tax even though it already enjoyed a large surplus of funds and could make only inconclusive arguments for seeking additional revenue from one source. This Court concluded that the tax was imposed merely for the sake of taxation.

Grand Central argues that the tax imposed upon it is unreasonable for the same reasons. It argues that the record demonstrates that at the time the tax was imposed, the Township had no plans for its use and that once the Township received the tax revenues, it found places to spend them. It further argues that the record indicates a benefit received by the general public palpably disproportionate to the burden imposed by the tax and that the Township capriciously disregarded its duty to the public by relying so heavily upon tax revenues from a single private enterprise, which may discontinue its business at will.

■ The record, however, amply supports the trial court's findings that the Township had specific needs and goals when it imposed the tax; that the Township has used the tax for the general benefit of the citizens of the Township; that the Township continues to have solid needs and goals for future tax revenues; and that the Township, unlike the municipality in *Keystone,* has not enjoyed a revenue surplus during the applicable period which would make the waste disposal tax unnecessary or of marginal public value. Specifically, the record supports the trial court's findings that the Township purchased with the tax revenues new equipment and trucks needed by the Township, that the Township allocated revenues for recreational

facilities, and that the Township is planning the construction of a new municipal building.[3] Further, the Township has devised a five-year plan for the years 1990–1994 setting forth Township priorities for which tax revenue is required.[4] Therefore, under the guidelines set forth in *Keystone*, this Court cannot conclude that the trial court erred in finding the waste disposal tax to be reasonable.[5]

■ Grand Central next argues that even if the tax is reasonable, it is nevertheless excessive, even as reduced by the trial court, because it is greater than the host municipality fee imposed under Act 101 and because the "exorbitant" revenues from the waste disposal tax were not used for the public good but instead have been squandered by the Township. The previous discussion disposes of Grand Central's contention that the evidence does not support the trial court's finding that the general community receives benefit from the tax. Indeed, Grand Central's chairman testified at trial that the Township's use of tax money for capital improvements provides a general benefit to the public. N.T., pp. 279–80. Further, Grand Central provides no authority to support its contention that a tax imposed upon

3. Testimony in the record indicates that a new building is needed because the existing municipal building is becoming inadequate in terms of space and function. *See* N.T., pp. 29–30.

4. Although Grand Central argues that the five-year plan was devised only for purposes of bolstering the Township's evidence in this action, the record does not provide substantial evidence that this was the case. On the contrary, the record indicates that the Township enacted the plan because it is a sound financial planning device for local governmental units. N.T., pp. 97–99. Further, the Township's five-year plan envisions legitimate governmental concerns and expenditures, including an environmental fund, continued road improvements, and the construction of a new municipal building. *See* N.T., p. 113.

5. Concerning Grand Central's contention that the Township capriciously disregarded its public duty by depending upon a single private enterprise to provide a large share of its revenue, no law has been advanced to support this inventive argument. While Grand Central's argument may question the wisdom of this form of financial planning or dependence, there is nothing to suggest that it is unlawful. A municipality may impose a waste disposal tax, and the reality may often be that only one or two facilities will be subject to that tax within a given local governmental unit. *See Keystone.*

landfills or waste disposal facilities under the Tax Act is excessive if it generates greater revenues than that generated by the host municipality fee. On the contrary, Act 101 specifically provides that the host municipality fee shall not supersede any tax imposed on a landfill or waste facility under the Tax Act which is in excess of the amount imposed on or before December 31, 1987. 53 P.S. § 4000.1301(d). The tax imposed by the Township prior to December 31, 1987 was five percent.

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 1st day of April, 1991, the order of the Court of Common Pleas of Northampton County is hereby affirmed.