In re **FUNDS IN the POSSESSION OF CONEMAUGH TOWNSHIP SUPERVISORS.**

**Michael Shreckengost, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1998.
Decided Feb. 10, 1999.

---

Kenneth L. Nichols, Lower Burrell, for appellant.

William G. Barbin, Johnstown, for appellee, Conemaugh Tp.

D.C. Nokes, Jr., Johnstown, for appellee, William Richards.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., and FLAHERTY, J.

SMITH, Judge.

This litigation arises from $20,000 in cash found in a package on a roadside by Conemaugh Township police during a routine traffic stop in the township on February 15, 1996. The Court of Common Pleas of Somerset County declared the police officer who found the cash, Officer William Richards, to be its owner. The subject of the traffic stop, Michael Shreckengost (Appellant), contends that the court should have determined that he lost the cash and is the rightful owner. This Court must decide whether either Appellant or Officer Richards should be declared the rightful owner of the funds or whether the funds should be reported to the State Treasurer pursuant to the Act commonly known as the Escheat Act, Article XIII.1, Sections 1301.1—1301.29, of the Act of April 29, 1929, P.L. 343, *as amended*, added by Section 5 of the Act of December 9, 1982, P.L. 1057, 72 P.S. §§ 1301.1—1301.29.

I

On the evening in question, Officer Richards observed a truck parked beside the road but facing in the wrong direction, and he stopped to investigate. The officer exited his cruiser and confronted Appellant, who was standing beside the truck relieving himself. Officer Richards requested that Appellant produce his license and owner's card and then walked around the truck to check its registration. As the officer did so, he noticed a black plastic package lying approximately six feet behind the truck and four feet from the roadway. Officer Richards retrieved the package, and after returning to his cruiser he opened a corner of it and discovered the cash at issue in this case. Suspecting criminal activity, Officer Richards radioed for support, and Officer John F. McKnight arrived shortly thereafter. In response to the officers' inquiries, Appellant repeatedly denied throwing anything from his truck. The officers extensively searched the truck and Appellant's person but found

no evidence of illegal activity. Eventually, they permitted him to depart.

After releasing Appellant, the officers returned to the police station, where they inventoried the package and gave it to Conemaugh Township Chief of Police Ronald Imler. Chief Imler assumed custody of the cash and contacted the Somerset County 9–1–1 service, which searched the National Crime Information Center database of all lost, missing or stolen funds reported to police departments. The 9–1–1 coordinator reviewed all messages received from January 1 through September 10, 1996 but found no reports of lost, missing or stolen funds in the amount of the cash in question. Chief Imler also periodically reviewed the lost and found sections of two local newspapers and contacted neighboring municipalities without result.

On May 23, 1996, Conemaugh Township petitioned the trial court for a declaratory judgment awarding the cash to Officers Richards and McKnight after the township deducted its costs. A hearing was held on September 10, which had been advertised in local newspapers, but no claimant appeared to contest the petition. The next month, however, Chief Imler read an article in the Pittsburgh Post–Gazette in which Appellant claimed ownership of the cash. Chief Imler contacted Appellant, who told the chief that he had accidentally thrown the money from his truck. Appellant described the cash as $20,000 in $1,000 bundles secured by rubber bands and requested that the township mail him a check at a Florida motel.

Further correspondence failed to resolve the matter, and the court held a second hearing on April 11, 1997, at which Appellant provided the following account. On February 15, 1996, Appellant's former brother-in-law, Terry Nemeth, gave him the cash for the purpose of speculating on Florida real estate. Appellant cannot describe the denominations of the cash because he did not count the money when he received it from Mr. Nemeth, but instead he immediately stored it among garbage that had accumulat-

ed in the back of his truck. Appellant was drinking that evening, and he was forced to stop and relieve himself beside the road where Officer Richards discovered him. When the officer arrived there was a half-empty beer can on the driver's side floor of the truck and more beer cans in the back. While Officer Richards sat in the police cruiser facing him, Appellant decided it would be prudent to dispose of the beer cans by throwing them out his window. At the same time Appellant also inadvertently threw out the package of cash.[1] After the police permitted him to leave, Appellant visited three bars or restaurants, eventually returning to his grandparents' Pennsylvania farmhouse after 1:00 a.m.

Appellant first noticed that the money was missing the next morning. Although Appellant returned to the scene of his encounter with Officers Richards and McKnight to look for the cash, he did not report his loss to any public official. Appellant explained that he could have lost the money in any of the several counties that he traveled through that night, and he believed that the officers would contact him if they found it. Shortly thereafter Appellant returned to his home in Florida. On a Thursday night in September when Appellant was again in Pennsylvania, he saw a television news story about the money found by the Conemaugh Township police. Appellant waited two days before he traveled to the Conemaugh Township municipal building to make his claim, but the offices were closed, as it was Saturday. Thus thwarted, Appellant returned to Florida without any further attempt to secure the cash. Later Tom Gibbs from the Pittsburgh Post–Gazette contacted Appellant, and he told Mr. Gibbs how he had lost the money.

■ After examining the package of cash *in camera* and considering the testimony presented, the trial court gave no credence to Appellant's account. The court explained:

If only because of discrepancies between Schreckengost's description and the actual

---

1. Officer Richards testified that he found no beer cans at the scene and did not see Appellant throw anything from his truck. Also, Officer Richards testified that he found the cash before returning to his cruiser.

packaging of the money, we are compelled to reject Mr. Schreckengost's claim.

In addition, however, we find it difficult to believe that an owner of $20,000.00 would treat efforts at recovery in the cavalier or lackadaisical manner described by Mr. Schreckengost. Surely, upon learning of its whereabouts, a 'true owner' would have mounted an immediate and diligent effort to retrieve the money.

We have also noted the sequence of events when Officer Richards arrived at the scene and the point at which the money was found, as well as Mr. Schreckengost's denial at the scene, of having thrown anything from the truck.

The evidence is insufficient to support Mr. Schreckengost's claim.

Trial Court Opinion, at pp. 10—11. The trial court also concluded that Officer Richards had a valid claim to the cash as its finder and thus declared him its owner after deducting costs. Appellant appealed to the Pennsylvania Superior Court, which transferred the matter to this Court.[2]

## II

■ Appellant contends before this Court that he made reasonable efforts to recover the cash; that he provided adequate information to local officials and the trial court to identify himself as the bailee for the true owner of the cash; that Conemaugh Township failed to exercise due diligence and good faith in searching for the true owner; that Conemaugh Township is not entitled to recoup its costs; and that the matter should be decided based on the law of lost property. The trial court placed no credence in Appellant's account whatsoever and found that the evidence presented failed to establish that he ever owned the cash. Appellant challenges this finding as contrary to the evidence in his

second argument. Nevertheless, questions of credibility and the resolution of testimonial conflicts are for the trial court to decide. *Grand Central Sanitary Landfill, Inc. v. Township of Plainfield,* 138 Pa.Cmwlth. 640, 589 A.2d 767 (1991). Furthermore, the somewhat unusual financial practices and elaborate explanations of Appellant's account amply support the trial court's determination that Appellant has no interest in the cash. Accordingly, this Court may not disturb it.

■ Next the Court must consider Officer Richard's claim as finder of the cash. The trial court found the Escheat Act[3] inapplicable, reasoning that Officer Richards presented a lawful claim to the cash under the common law as the finder of lost property. It is well settled that in Pennsylvania a finder of lost property has a valid claim against all except the true owner. *Hamaker v. Blanchard,* 90 Pa. 377 (1879). Property is lost when the owner involuntarily parts with it through carelessness, negligence or inadvertence. *See Hamaker;* Black's Law Dictionary 946 (6th ed.1990). If the property is deliberately placed somewhere and then forgotten it is not lost but rather mislaid. *Hamaker.* Property is not abandoned unless the owner voluntarily and intentionally relinquishes all rights to it. *Pocono Springs Civic Association, Inc. v. MacKenzie,* 446 Pa.Super. 445, 667 A.2d 233 (1995) (citing *Commonwealth v. Wetmore,* 301 Pa.Super. 370, 447 A.2d 1012 (1982)). The trial court concluded that the cash in this case was lost rather than mislaid, and this determination is undisputed and supported by the record. The court found it unnecessary to determine if the funds were abandoned but stated that if they were the result would be the same.

■ The trial court relied on common pleas court cases which have held that the Pennsylvania law of lost property permits

---

**2.** An appellate court's review of a declaratory judgment action is limited to determining whether the trial court committed an error of law, abused its discretion or made necessary factual findings that are unsupported by substantial evidence on the record as a whole. *Walker v. Ehlinger,* 544 Pa. 298, 676 A.2d 213 (1996).

**3.** Section 1301.9 of the Escheat Act, 72 P.S. § 1301.9, provides that certain property held by

courts and public officers and agencies shall be presumed abandoned and unclaimed, including:

5. All property held by or subject to the control of any court, public corporation, public authority or instrumentality of the Commonwealth or by a public officer or political subdivision thereof, which is without a rightful or lawful owner, to the extent not otherwise provided for by law, held for more than one year.

police officers to claim property found in the performance of their duties. *Carr v. Summers*, 59 Pa. D. & C. 6 (1947); *Walker v. West Hills Regional Police Department*, 13 Pa. D. & C.3d 456 (1980). In *Carr* the trial court examined the city's prohibition against police officers' receiving additional compensation for performing their duties and concluded that no violation occurred where a police officer retained lost cash discovered during an investigation. The court in *Walker* followed *Carr* and merely held that the rule in *Hamaker* applies to all: if an officer finds something during the course of his or her employment and it is unclaimed, the officer may retain it. Neither of these cases fully examined the public policy implications of their result; they were decided strictly on the basis that the officers' retention of the property found by them did not violate the municipalities' prohibition against officers receiving additional remuneration for performing their duty. While this Court reposes the utmost respect in the decisions of the common pleas courts, they are not binding on this Court. *See, e.g., Kaplan v. Southeastern Pennsylvania Transportation Authority*, 688 A.2d 736 (Pa.Cmwlth.1997).

In this matter the Court finds more persuasive the reasoning of the appellate courts in other jurisdictions that have precluded police officers from retaining property found in the performance of their official duties. *See Baker v. City of West Carrollton*, 64 Ohio St.3d 446, 597 N.E.2d 74 (1992) (interpreting an escheat statute to prevent police officers from retaining lost property); *Kansas v. Coburn*, 220 Kan. 750, 556 P.2d 382 (1976) (upholding theft conviction of a sheriff who retained lost or abandoned guns found in the course of his employment where a statute provided for a sheriff's sale of unclaimed evidence); *Noble v. City of Palo Alto*, 89 Cal.App. 47, 264 P. 529 (1928) (holding that public policy prevents the police from claiming lost property); *Majewski v. Farley*, 203 A.D. 77, 196 N.Y.S. 508 (1922) (concluding

that a municipal charter which provided for the disposition of lost property in the possession of the police divested officers of a claim to the property as finders).

■ Pennsylvania recognizes the independent authority of the courts to discern public policy in the absence of legislation. *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998). Although the public policy which dictates the enactment of legislation is determined by the wisdom of the General Assembly, courts must rely upon consistency with sound policy and good morals in the administration of the law. *Id.* (discussing *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407 (1941)). It is well settled that "[r]emedies are provided for evils when they are discovered, and rules of law are applied when a necessity arises for their application." *Goodyear v. Brown*, 155 Pa. 514, 26 A. 665 (1893). Although public policy eludes precise definition, it may in a general way be considered to be that principle of law which abhors actions against the public good. *See Noble* (citing *Goodyear*). It must always be ascertained by reference to the law and legal precedents. *Shick.* Anything that clearly tends to injure the public confidence in the purity of the administration of the law indisputably offends public policy. *See Goodyear.*

This Commonwealth vests its municipal police officers with great responsibility and requires them to adhere to standards higher than those of many other occupations. *See Lower Gwynedd Township v. Unemployment Compensation Board of Review*, 44 Pa. Cmwlth. 646, 404 A.2d 770 (1979). One of the most important duties entrusted to police officers is the safeguarding of the property of the citizens of this Commonwealth. Another is the gathering of evidence of crimes. Allowing police to claim property found in the performance of their official function creates an obvious conflict with these duties, which could erode essential public trust.[4]

4. The California court in *Noble* provides an eloquent discourse on the important role entrusted to police regarding the handling of lost property:
 When a police officer discovers personal property of value abandoned upon the streets of a city, it is but natural and reasonable to assume that either of two things has occurred, namely,

that the property has been stolen or has been lost. Indeed, in the instant case the purpose of the police, or at least one purpose as admitted, was to discover whether or not the [lost bicycles] had been stolen. In either case, however, it is well within the duty of a police officer to make inquiry, and, pending the result of that

The mere fact that ordinary citizens may retain lost property is no answer. Not everything allowed ordinary citizens and not forbidden in advance by some act of the General Assembly is permitted to police officers. *See, e.g., Shields v. Latrobe–Connellsville Coal & Coke Co.,* 239 Pa. 233, 86 A. 784 (1913). Rather, police must adhere to demanding standards well above those applied to ordinary citizens. *See, e.g., York Township Board of Commissioners v. Batty,* 694 A.2d 395 (Pa.Cmwlth.), *appeal denied,* 550 Pa. 695, 704 A.2d 1384 (1997). The appearance of impropriety arising from police personally retaining large sums of lost cash discovered by them during the performance of their official duties undermines public faith in law enforcement and is inimical to the public good.

 In conclusion, because the Court is bound by the trial court's credibility findings, the Court consequently must accept the trial court's determination that it disbelieved Appellant's testimony and that he never owned the cash. Because Officer Richards may not claim ownership as finder of the property for the reasons discussed above, neither Appellant nor Officer Richards has a lawful claim to the $20,000. The Court therefore concludes that as the cash has been held for more than one year by the township and is without a rightful or lawful owner, the property is presumed to be abandoned and unclaimed under Section 1301.9 of the Escheat Act, 72 P.S. § 1301.9, and it must be report-ed to the State Treasurer.[5] The Court notes that Section 1301.18(b), 72 P.S. § 1301.18(b), assigns the Treasurer discretion to deduct reasonable costs from escheatable funds before depositing them to the credit of the General Fund. Thus the deduction of costs must be commanded to the discretion of the Treasurer.

For the foregoing reasons, the Court concludes that the trial court erred in declaring that Officer Richards is the rightful owner of the $20,000, and its order is accordingly reversed. This case is remanded to the trial court for the purpose of directing the Conemaugh Township Supervisors to report the funds to the State Treasurer as property presumed to be abandoned and unclaimed and for taking other necessary action to effect an escheat of the funds to the State Treasurer pursuant to applicable provisions of the Escheat Act.

### ORDER

AND NOW, this 10th day of February, 1999, the order of the Court of Common Pleas is reversed, and this case is remanded to the trial court for the purpose of directing the Conemaugh Township Supervisors to report the funds to the State Treasurer as property presumed to be abandoned and unclaimed and for taking other necessary action to effect an escheat of the funds to the State Treasurer pursuant to applicable provisions of the Escheat Act.

Jurisdiction is relinquished.

---

inquiry, to assure the safety and protection of the property, which is otherwise liable to destruction or deterioration. This duty and right of the police is universally conceded to the extent that the average citizen accepts it as a matter of course, and upon the discovery of property apparently lost the first thing that suggests itself is to notify the police.... Each individual forthwith concedes and recognizes the law and the right of the officer; and this right and power inures to the policeman solely and entirely by virtue of his office and not otherwise. To uphold the contention of the plaintiff herein would be to say to a police officer, in effect:

'It is your sworn duty to preserve peace and order and to protect life and property. You shall, among other duties, diligently make investigation where you have reason to believe crime has been committed, and the most common crimes are those of larceny and theft. When you find property abandoned and without an owner, you shall take all necessary means to preserve and protect the same, while endeavoring to ascertain whether a public offense has been committed. If you can conclude that no crime has been done, then you may retain the property, and, if the true owner is not located, then the property or the proceeds thereof shall belong to you personally.'

*In view of what we have heretofore said on the question of public policy, we consider this a dangerous doctrine to announce, inimical to and contrary to a sound public policy.*

*Id.,* 264 P. at 532 (emphasis added).

5. *See* Section 1105 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 325 (transferring the powers and duties of the Secretary of Revenue under the Escheat Act to the State Treasurer).

McGINLEY, Judge, dissenting.

I respectfully dissent from the majority's conclusion that Appellant is not the true owner of the $20,000 in cash (Cash) and that the Cash should escheat to the State Treasurer because Officer Richards cannot recover the Cash when he found it in the course of his employment as a police officer.

The majority dismisses Appellant's claim to the Cash because the trial court found Appellant's testimony not credible and notes, "the somewhat unusual financial practices and elaborate explanations of Appellant's account amply support the trial court's determination that Appellant has no interest in the cash." Majority opinion at 993. I disagree.

In effect, the majority agreed with the trial court that Officer Richards was the finder of the Cash but disagreed with the trial court's determination that he could keep the Cash. Under the law of lost property in Pennsylvania, a finder of lost property has a valid claim against all except the true owner. *Hamaker v. Blanchard*, 90 Pa. 377, 379 (1879). Pennsylvania trial courts have held that the finder must exercise good faith and diligence in attempting to find the true owner of the property. *See Carr v. Summers*, 59 Pa.D. & C. 6 (Philadelphia County 1947); *Walker v. West Hills Police Department*, 13 D. & C.3d 456 (Cambria County 1980).

Here, the trial court determined that Officer Richards and Chief Imler acted with good faith and diligence in their attempts to find the true owner. Chief Imler arranged with the Somerset County 9–1–1 coordinator to provide him with reports concerning lost or stolen money, he periodically checked the lost and found classified advertisements in two area newspapers and checked with two neighboring police chiefs to see if anyone in their communities lost the Cash. The trial court made this determination even though it found that Officer Richards and Chief Imler, who served as custodian of the Cash, made no attempt to contact Appellant until an article appeared in the newspaper linking Appellant to the Cash. Chief Imler made no attempt to contact Appellant when he knew of the police stop that Officer Richards found the Cash approximately six feet from Appellant's pickup, and had Appellant's address in Florida. The trial court excused Chief Imler from conducting a more complete investigation because Appellant allegedly told Officer Richards and Officer McKnight that he did not throw anything from his truck. "An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Masthope Rapids Property Owners Council v. Ury*, 687 A.2d 70, 71 (Pa.Cmwlth.1996). Here, the trial court's determination that Officer Richards and Chief Imler acted with good faith and diligence to find the true owner was manifestly unreasonable. The majority does not address the lack of diligence by Officer Richards and Chief Imler to determine the true owner.

I believe the trial court had no option but to conclude that Appellant threw the Cash from the truck. Undeniably, Appellant's conduct left much to be desired, but the evidence is overwhelming that Appellant possessed the Cash and it is inconceivable that anyone but Appellant discarded the Cash found outside his truck, absent any showing of leprechaun activity in the vicinity. Appellant testified that he obtained the Cash from Mr. Nemeth [1] earlier that day. He also testified that he was drinking and that he threw beer cans and, by accident, the bag containing the Cash from his truck while Officer Richards sat in the police car. Appellant described the contents of the bag and the bag itself.[2] While Appellant might have told the officers that he did not throw anything from of his truck, he explained he did so because he did not want to be arrested for driving under the influence.

The trial court reasoned that Appellant's lack of diligence to recover the Cash meant

1. Whether Mr. Nemeth is the rightful owner of the Cash is not before this Court.

2. Although the trial court conducted a review of the bag and its contents, the trial court made no findings as to the size, shape or color of the bag.

As a result, We cannot with certainty determine the accuracy of Appellant's description. Appellant was the only person, including the trial court, to describe how the Cash was packed.

that Appellant was not the "true owner". Appellant disputed the trial court's evaluation of his efforts and argued that the owner of lost property does not have to diligently search to recover the lost property to maintain his status as the owner. In order for an owner of property to relinquish his ownership interest in that property he must abandon it. Abandoned property is defined as property:

> [T]o which an owner has voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming further possession or resuming ownership, possession or enjoyment.

*Commonwealth v. Wetmore,* 301 Pa.Super. 370, 447 A.2d 1012, 1014 (1982), quoting 1 AM. JUR. 2D *Abandoned, Lost, and Unclaimed Property* § 1. To constitute abandonment there must be an intention to abandon combined with "external acts" which carry out that intention. *Quarry Office Park Assocs. v. Philadelphia Elec. Co.,* 394 Pa.Super. 426, 576 A.2d 358, 363 (1990).

Here, the trial court determined that the cash was not abandoned. I agree. Because it is beyond conjecture that Appellant never intended to abandon the Cash, and because Officer Richards and Chief Imler did not exercise reasonable diligence in their attempts to find the true owner, I disagree with the majority that the Cash should escheat to the State Treasurer. Instead, I would order that the Cash be returned to Appellant less the costs and expenses of Conemaugh Township in presenting the petition for declaratory judgment.

Judges FRIEDMAN and FLAHERTY join in this dissent.